[No. 20496.  Department One.  April 22, 1927.]

# F. A. JONES et al., Appellants, v. EMERSON HAMMER, as Treasurer for Skagit County et al., Respondents.[1]

[1] CONSTITUTIONAL LAW (100)—ELECTIONS (3)—SPECIAL PRIVILEGES—QUALIFICATION OF VOTERS—RESIDENTS. Rem. Comp. Stat., § 4240, restricting the right to vote at irrigation district elections to residents of the county, is not unconstitutional as providing an unreasonable classification as to eligible voters.

[2] DRAINS (5)—STATUTES (74)—DISTRICTS—PROCEEDINGS TO ESTABLISH—PROVISOS—CONSTRUCTION. Rem. Comp. Stat., § 4240, providing that no person shall be entitled to vote at irrigation district elections unless he is a resident of the county, with a proviso that an officer or agent of a corporation owning land in the district may vote, does not authorize such agent or officer to vote unless he is a resident of the county.

[3] DRAINS (2)—DIKING DISTRICTS—LANDS THAT MAY BE INCLUDED. A diking district may be organized covering tide lands of the second class, under Rem. Comp. Stat., § 4236, providing that "any portion" of the county requiring diking may be organized into a diking district.

[4] SAME (9)— PETITION FOR ESTABLISHMENT — SUFFICIENCY. A petition for a diking district is sufficient, in that respect, where it alleges, in the language of Rem. Comp. Stat., § 4237, that it will be conducive to the public health, convenience and welfare and will increase the public welfare and be a special benefit to the property included.

[5] SAME (9)—PETITION—SIGNERS. Findings that a petition for a diking district was signed by more than a majority of the ownership of the property, to wit, approximately seventy per cent thereof, sufficiently complies with Rem. Comp. Stat., § 4237, requiring that the petition be signed by such a number as own at least a majority of the acreage in the proposed district.

[6] SAME (9)—PROCEEDINGS TO ESTABLISH—SUMMONS BY PUBLICATION. Rem. Comp. Stat., § 4260, requiring that the published summons in the organization of a diking district shall contain a description of the land, is complied with by the publication of a summons reciting that a complete description of the

[1]Reported in 255 Pac. 955.

objects and purposes are set forth in the petition, immediately followed in the publication by the petition, which contained a description of the land.

[7] EMINENT DOMAIN (74)—AWARD — TIME WITH REFERENCE TO WHICH COMPENSATION IS TO BE MADE. A condemnation judgment in a diking district proceeding, entered September 9, 1925, is not void for failure to pay the awards until January 5, 1927, where no provision of the statute required the payment within any specified time, and no property owner had appeared to claim the damages awarded.

[8] DRAINS (11)—MODE AND PLAN OF CONSTRUCTION. A diking district is not invalid for failure to complete any system of internal drainage, where the system adopted included only the enclosing dike, pumping plant and back dike, which were completed.

[9] SAME (8)—BONDS—ISSUANCE AND SALE—BIDS. Competitive bids for diking improvements not being required by Rem. Comp. Stat., § 4267, the bonds issued are not invalid for failure to let the contract on bids.

[10] SAME (8)—MUNICIPAL CORPORATIONS (157)—PUBLIC IMPROVEMENTS—CONTRACTOR'S BOND—REQUISITES AND VALIDITY. A bond, executed in compliance with the Act of 1915, Rem. Comp. Stat., § 1159, relating to bonds required of any municipality or body contracting for public work, is sufficient to authorize a contract by a diking district, although it is not in compliance with the earlier act of 1895, Id., § 4267, of the diking act, requiring two bonds in double the amount of the contract price; the later act controlling.

[11] MUNICIPAL CORPORATIONS (520)—PUBLIC DEBT—BONDS—LIMITATION OF AMOUNT. Where the debt of a diking district was not a general obligation of the district, but rested primarily against the property specially benefited, it is not illegal as in excess of the limitation of Const., Art. 8, § 6.

[12] DRAINS (1)—STATUTES (82)—RETROSPECTIVE PROVISIONS— VALIDITY. Where no vested or constitutional right has been invaded, Rem. 1927 Sup., §§ 4292-1 et seq., is properly given a retrospective operation, and authorizes the issuance of bonds by a diking district, organized, with judgment of condemnation entered, prior to the passage of the act.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered January 14, 1927, in favor of the defendants, dismissing an action to enjoin

the issuance and sale of diking district bonds, after a trial to the court. Affirmed.

*Shorett, McLaren & Shorett,* for appellants.

*Peters & Powell, Robert H. Evans,* and *Lundin & Barto,* for respondents.

MAIN, J.—This action was brought to prevent the issuance and sale of bonds by diking district No. 23 and to have the organization of the district declared to be void and of no effect. The cause was tried to the court without a jury and resulted in a judgment dismissing the action, from which the plaintiffs appeal.

By diking district No. 23, it was sought to reclaim approximately ten thousand acres of tide lands of the second class in Skagit county. To this end, on May 21, 1925, the persons owning property therein filed a petition with the board of county commissioners praying for the organization of the district under the law as it is codified in ch. 1 of title XXVII of Remington's Compiled Statutes. A hearing was had before the board after publication of notice as required by law, and the board ordered the establishment of the district subject to the property owners' election which they called for July 3, 1925. On July 6, 1925, the board received and canvassed the returns of the election and entered a final order establishing the district. The three commissioners elected qualified, held a meeting and adopted plans and specifications for the enclosing dike, a back dike and a pumping plant. On July 14, 1925, the board directed the bringing of condemnation proceedings to acquire the necessary rights of way for the dikes and to establish the maximum benefits which the property benefited would derive from the improvement. The condemnation suit was carried through and judgment was entered therein on September 9, 1925. On October

6, 1926, the district entered into three separate contracts with the respondent, Pacific Dredging & Construction Company, for the erection of the enclosing dike. No contract was let for the pumping plant or for any other feature of the improvement. On November 26, 1926, the board passed a resolution providing for the issuance of the bonds here involved. The enclosing dike, when completed, will be approximately nine miles in length, and at the time the present action was instituted, one mile thereof had been completed and considerable construction work had been done upon another mile. In the prosecution of the work, the contractors had expended about two hundred thousand dollars. The appellants own land in the district but reside in King county.

[1] The first question is whether the diking district act is unconstitutional and void because of the classification therein of who shall be entitled to vote, not only at the organization election, but at subsequent elections. Section 4240, Rem. Comp. Stat. [P. C. § 1946-5], which is one of the sections of the title and chapter of the code above referred to, among other things, provides:

"And no person shall be entitled to vote at such election or at the elections of commissioners hereinafter provided for unless he shall be a qualified elector of the county in which such district is located, and shall own land in the district. . . . Provided that at any election held under the provisions of this act, an officer or agent of any corporation owning land in the district duly authorized thereto in writing, may cast a vote on behalf of said corporation; when so voting he shall file with the election officers such written instrument of his authority."

It will be observed that, for an individual to vote under this section, he must own land in the district and be a qualified elector of the county in which the district

is located. It is said that this is an unreasonable and arbitrary classification, in that it permits a resident of the county to vote while denying that right to a non-resident of the county, even though the latter may be as near or nearer the district than the residents of the county. It is only an arbitrary and unreasonable classification as to which there is no just difference or distinction as between the classes affected and others that will render a law unconstitutional. Persons are not similarly situated, if there is any reasonable difference in their relation to the purposes of the legislation. *State ex rel. Lindsey v. Derbyshire,* 79 Wash. 227, 140 Pac. 540; *State ex rel. Carroll v. Superior Court,* 113 Wash. 54, 193 Pac. 236. A county is one of the units of the state, and it cannot be said that a classification based upon residence in the county as against nonresidence is arbitrary and unreasonable. In *Bayless v. Webb,* 251 Mo. 513, 158 S. W. 596, it was held that a statute giving the right of protest to resident owners, but denying it to nonresidents, was based upon a reasonable classification.

While the facts in that case are not the same as those in the present case the principle is the same. The case of *Malim v. Benthien,* 114 Wash. 533, 196 Pac. 7, relied on by the appellants, is different in its facts. There there was an original diking district which was subsequently enlarged, and it was held that a statute which gave the electors of the original district sole power to elect its officers and dictate its policy and denied this right to those in the enlarged portion of the district was unconstitutional, because not based upon any reasonable classification. The case now before us is not one where there is a discrimination as to any one owning property in the district other than the requirement that, before being entitled to vote, residence in the

county is necessary. In other words, in the present case the basis of classification is the county as affecting the right to vote. In the case cited, the basis of classification was the original district and the enlarged district.

[2] Again, it is said that the statute is unconstitutional because it permits an officer or agent of a corporation owning land in the district to vote when such officer or agent is not a resident of the county and denies this right to individuals. This does not appear to us to be the proper construction of the statute. It is expressly provided therein that "no person" shall be entitled to vote unless he shall be a qualified elector of the county. This is followed by the proviso with reference to an agent or officer of a corporation voting, and the plain implication is that such officer or agent to be entitled to vote must be a resident of the county. Otherwise, the proviso would extend the scope of the statute, when its function is to put a restraint upon, exception to, or modification of something that appears in the declaring part of the act. *Tatum v. Marsh Mines Consolidated,* 108 Wash. 367, 184 Pac. 628, 187 Pac. 410; *State ex rel. Pendleton v. Superior Court,* 119 Wash. 73, 204 Pac. 1053. The intent of the legislature undoubtedly was that an officer or agent of a corporation who owned land in the district might vote provided such officer or agent resided in the county. The act is not unconstitutional in either of the respects claimed.

[3] The second question is whether the act authorized the formation of diking districts covering tide lands of the second class. Rem. Comp. Stat., § 4236 [P. C. § 1946-1], in part provides:

"Any portion of a county requiring diking may be organized into a diking district, and when so organized, such district, and the board of commissioners hereinafter provided for, shall have and possess the power herein conferred or that may hereafter be conferred by

law upon such district and board of commissioners,
. . . ''

This statute provides that ''any portion'' of the county requiring diking may be organized into a diking district. The lands involved in diking district No. 23 were within the boundaries of Skagit county and come within the designation ''any portion'' thereof. The appellants refer to a number of other sections of the statute claiming that these indicate a legislative intent not to include tide lands. The respondents, on the other hand, refer to a number of provisions which they claim evidence such intent. When all the provisions referred to are considered it cannot be said that any of them either enlarge or diminish the well understood meaning of ''any portion'' which would include tide land within the county. Tide lands of the second class are under the act.

[4] The third question is whether the property owners' petition was sufficient. Rem. Comp. Stat., § 4237 [P. C. § 1946-2], among other things, provides that the petition shall set forth that the proposed system of diking ''will be conducive to the public health, convenience and welfare, and increase the public revenue, and that the establishment of said district and said system of diking will be of special benefit to the property included therein.'' The petition recited:

''That the construction of said system of dikes will be conducive to the public health, convenience and welfare, and will increase the public revenue.

''That the establishment of said diking district and the construction and completion of the system of dikes contemplated will be of special benefit to all of the property included within the confines thereof.''

The objection to the petition is not well founded.

[5] The fourth question is whether the county commissioners' findings on the original property owners'

petition were sufficient to sustain jurisdiction. Section
4237 in part provides that the original petition "shall
be signed by such a number as own at least a majority
of the acreage in the proposed district." The findings
recite

"... that the petition of said property owners
was signed by more than a majority of the ownership
of the property embraced within the confines of said
proposed district by, towit: approximately seventy per
cent of the ownership of said property."

While the findings do not exactly follow the language
of the statute, the meaning is the same. It cannot be
said that the difference between the statute and the
findings is sufficient to show want of jurisdiction. To
so hold would be very technical.

[6] The fifth question is whether the published sum-
mons was fatally defective. The statute in this respect,
Rem. Comp Stat., § 4260 [P. C. § 1946-24], requires that
the published summons shall contain a "description of
the land." The summons was published in the Ana-
cortes American. The concluding paragraph recites
that complete description of the objects and purposes of
the proceeding are set forth in the petition which was
published in full immediately following the summons.
The petition contains a description of the land to be
taken in the condemnation proceeding. If the signature
of the attorney and his address were eliminated from
the foot of the summons and the caption eliminated
from the petition the summons and petition would con-
stitute one continuous publication. Since the petition
was published in full and contains a description of the
land and this immediately follows the summons and is
referred to therein it was a substantial compliance with
the statute and that is all that is required. *Old Repub-
lic Mining Co. v. Ferry County*, 69 Wash. 600, 125 Pac.

1018; *Jesseph v. Carroll,* 126 Wash. 661, 219 Pac. 429. Mere irregularities in the publication will not invalidate it. Freeman on Judgments (5th ed.) § 348. While the summons in the present case did not literally comply with the statute there was substantial compliance and the defect amounted to no more than an irregularity. Jurisdiction was acquired by the publication.

The sixth question is whether the condemnation proceedings were defective because of an insufficient description of the property benefited, or because the condemnation judgment did not sufficiently describe the property to be taken for the dike. The evidence shows that the proceedings were not defective in either of the respects claimed.

[7] The seventh question is whether the condemnation judgment was void on account of failure to pay awards within a reasonable time. The judgment was entered on September 9, 1925. Money to satisfy the judgment was paid into the registry of the court on January 5, 1927, the date upon which the present action was instituted. There is no provision in the statute requiring the district to pay the condemnation awards into court or to the property owners within any specified time. Prior to the time that the money was paid into the registry of the court no property owner had appeared to claim the damages which had been awarded to him. The mere fact of delay in paying the award into the registry of the court would not be a jurisdictional defect. There was no provision in the judgment to the effect that if the awards were not paid within a reasonable time the right to condemn would be forfeited.

[8] The eighth question is whether the proceedings were invalid for failure to adopt a complete system of

improvements. In *State ex rel. Matson v. Superior Court,* 42 Wash. 491, 85 Pac. 264, it was held in a drainage district proceeding that the commissioners must adopt before condemnation proceedings are instituted a complete plan or system for the improvement. In the present case the plan or system included the principal or enclosing dike, the pumping plant and what is referred to as the back dike. It did not include any system of internal drainage, but this was not required. The plan or system adopted was sufficient.

[9] The ninth question is whether the issuance and sale of the bonds to pay for the improvement should be restrained because the contract for the dike was awarded without competitive bidding. There is nothing in Rem. Comp. Stat., § 4267 [P. C. § 1946-31], which required the board to call for competitive bids. Where the statute is silent the rule is that such contracts need not be let at competitive bidding. In § 1186, McQuillin on Municipal Corporations, vol. 3, it is said:

"In the absence of charter or statutory requirement, municipal contracts need not be let under competitive bidding. So where a statute merely permits competitive bidding but does not require it, it is not necessary that the municipal authorities let the contract in that way. In such cases the corporate authorities are only required to act in good faith and to the best interest of the municipality."

There is nothing in the present case to show that the commissioners in letting the contracts did not act in good faith and to the best interests of the diking district. In the case of *Bier v. Clements,* 98 Wash. 310, 167 Pac. 903, cited by the appellants the commissioners in awarding the contract had been guilty of fraud and bad faith, and this completely distinguishes that case from the one now before us.

[10]  The tenth question is whether a bond was furnished by the contractor such as is required by law. This contention is based upon § 4267 where it is provided that the contractor shall furnish two bonds, each in double the amount of the contract price. This was not done, but as a substitute the district required one surety bond on each of the three contracts awarded in the penal sum of the contract price. If the section of the statute referred to is controlling, there would appear to be merit in this contention. The act of which that section was a part was passed in 1895. Section 1159, Rem. Comp Stat., [P. C. § 9724], was enacted in 1915 and requires that, whenever the governing board of any municipality or public body shall contract for public work that a bond shall be required. The bonds in question satisfy the requirements of this section, but do not meet the requirements of the act of 1895 (Laws of 1895, p. 317); § 4267 of the code. A bond executed in compliance with § 1159, that being the later statute, was sufficient. *Brown Bros. v. Columbia Irrigation Dist.,* 82 Wash. 274, 144 Pac. 74; *State ex rel. Clancy v. Columbia Irrigation Dist.,* 121 Wash. 79, 208 Pac. 27.

[11]  The eleventh question is whether the contract for the improvement was legal as exceeding the debt limit provided in § 6, art. 8 of the constitution. The debt represented by the proposed bond issue is not a general obligation of the district and therefore is not affected by the constitutional limitation. The debt created is for a local improvement and rests primarily against the property specially benefited.

[12]  The twelfth question is whether the district has power to issue bonds under ch. 69 of the act of 1925, p. 69 [Rem. 1927 Sup., § 4292-1 *et seq.*]. From the facts stated, it appears that the district was organ-

ized and the condemnation judgment entered prior to the passage of that statute. There is no showing in this case that any vested right of the appellants, or any right guaranteed them by the constitution, has been invaded by the act of 1925, and therefore they are not in a position to complain that the statute is retroactive and made to apply to districts organized prior to its passage. In *State ex rel. American Savings Union v. Whittlesey*, 17 Wash. 447, 50 Pac. 119, it was said:

"We find no provision, however, in our constitution inhibiting the passage of retrospective laws, and we think the rule is well settled that the legislature may enact such statutes whenever they are not restrained by constitutional provisions."

Whether the bonds should be issued under the statute as it existed at the time of the organization of the district or under a later act was a legislative question.

The judgment will be affirmed.

MACKINTOSH, C. J., MITCHELL, FRENCH, and FULLERTON, JJ., concur.