H. B. R. BUSHARD AND L. V. REDFIELD, APPEL-
LANTS, *v.* WASHOE COUNTY, RESPONDENT.

No. 3643

March 15, 1951. 229 P.2d 156.

*George Lohse,* of Reno, for Appellants.

*Jack Streeter,* District Attorney, Washoe County, and
*David Goldwater,* both of Reno, for Respondent.

**OPINION**

By the Court, EATHER, J.:

This action was brought by respondent county seeking to condemn certain land owned by appellants. The matter was tried by the court, sitting without a jury, and oral decision in favor of respondent was rendered by the court on August 15, 1950. On August 22, 1950, respondent served written notice of decision on appellants. Findings of fact, conclusions of law, and a judgment of condemnation were signed by the court and filed on September 11, 1950. No motion for a new trial was made at any time. On October 2, 1950, counsel for respondent and appellants stipulated that appellants'

have an extension of time within which to file a bill of exceptions on appeal, with a reservation by respondent of the right to move to strike the transcript of testimony on appeal at the proper time. On November 10, 1950, appellants filed in this court a record on appeal consisting of:

1. A volume containing a transcript of testimony.

2. A volume called a bill of exceptions certified by the Clerk of the District Court as the papers on file in Action No. 128,289 in the Second judicial district court, and consisting of a judgment roll containing:

Complaint.

Answer.

Findings of fact.

Conclusions of law.

Judgment of condemnation.

And containing in addition:

(a) Notice of decision.

(b) Proposed findings of fact and conclusions of law.

(c) Proposed judgment.

(d) Objections to findings of fact and conclusions of law and proposed form of judgment.

(e) Minutes March 10, 1950.

(f) Minutes March 17, 1950.

(g) Minutes April 14, 1950.

(h) Minutes April 19, 1950.

(i) Minutes August 15, 1950.

(j) Minutes August 17, 1950.

(k) Minutes September 8, 1950.

(l) Minutes September 11, 1950.

(m) Notice of appeal.

(n) Statement of receipt of bond.

Respondent moved this court to strike from appellants' record on appeal the transcript of testimony and the documents (a) to (n).

Appellants contend that there is not sufficient evidence to support the judgment of condemnation. It is the

settled law of this state, established by a long line of decisions, that a motion for a new trial must be made and determined before an appeal may be taken on the ground of insufficiency of evidence to support the judgment. Neill v. Mikulich, 57 Nev. 307, 64 P.2d 612; McGill v. Lewis, 61 Nev. 28, 111 P.2d 537, 116 P.2d 581, 118 P.2d 702; Snyder v. Garrett, 61 Nev. 85, 115 P.2d 769; In re Benson's Estate, 62 Nev. 376, 151 P.2d 762; Craig v. Harrah, 65 Nev. 294, 195 P.2d 688.

We are not here concerned with what use shall be made of the transcript once an appeal is properly perfected; nor are we concerned here whether the transcript can be considered when an appeal is taken from the judgment roll alone. The issue here is whether this transcript, submitted as a bill of exceptions, is properly before the court at all. Since the appellants failed to move for a new trial at any time, the transcript is not properly before this court. Snyder v. Garrett, supra.

The documents (a) to (n), submitted by appellants as a part of their bill of exceptions, were never settled and allowed by the judge or the court below; nor were they settled or allowed by stipulation of the parties. This is a necessary step in an appeal where the record of proceedings is submitted as a bill of exceptions. N.C.L. 9385.81, 1931–1941 Supp. The method is clearly set forth by our statutes and the requirement is mandatory. N.C.L. 9385.84, 9385.85, 1931–1941 Supp.

Appellants' record on appeal is, therefore, limited to those documents comprising the judgment roll. What constitutes the judgment roll is set forth by statute. N.C.L. 8829, 1929. Conclusions of law are not a part of the judgment roll. Harper v. Lichtenberger, 59 Nev. 495, 92 P.2d 719. Minutes and the opinion and decision of the district court are not a part of the judgment roll. Documents, papers or exhibits which are not settled or

allowed by the court or by stipulation are not a part of a bill of exceptions. Craig v. Harrah, 65 Nev. 294, 195 P.2d 688; State ex rel. Dept. of Highways v. Pinson, 65 Nev. 510, 199 P.2d 631; Dillon v. Dillon, 67 Nev. 428, 220 P.2d 213.

Appellants submit that there is a variance between the oral pronouncement of the court and the final written entry of judgment, and that the time for filing motion for a new trial has not begun to run since no notice of decision has ever been given, based upon such written judgment.

In support of this contention counsel for the appellants refer to the case of Mortimer v. Pacific States Savings & Loan Company, 62 Nev. 147, at page 153, 145 P.2d 733, where the court stated that where the minute order of the decision of the trial court is at variance with the formal judgment filed thereafter, the latter must prevail. We are of the opinion that the rule announced in that opinion to the effect that the written order should prevail over the minute entry is correct. This because of the fact that such rule conforms to the practice followed for many years and accorded recognition by the court and the bar; that is to say, the solemn decree of a court bearing the signature of the judge thereof, is recognized as the judgment of the court until changed by appropriate proceedings instituted therefor. We find nothing in the Nevada case inconsistent with such practice. There is no question but what the pronouncement by the court from the bench of a judgment is the rendition of the judgment by the court. But in this case we are not concerned with the question of what shall be accepted by this court as evidence of what judgment was rendered; we are concerned with the question of when the judgment was rendered. The instant case is distinguishable on the facts from Mortimer v. Pacific States Savings & Loan Company, supra.

Appellants were served with the written notice of decision on August 22, 1950, and the time for filing motion for new trial began from that date. Austin v. Dilday, 55 Nev. 1, 23 P.2d 504. But any arguments by appellants as to the time when motion for a new trial should be made are without merit since no motion for a new trial appears in the record before us.

In his oral argument and in his brief opposing the motion to strike, counsel for appellants asserted that appellants had filed a notice of intention to move for a new trial on September 14, 1950, but that the court below refused to hear said motion. Examination of the certified record fails to disclose such a notice or order of refusal by the court to hear a motion for a new trial. Nor has this been made a ground for appeal.

Appellants have placed themselves in the position of asking this court to review a record on appeal while setting forth that it is not complete or accurate.

The motion to strike as to the notice of appeal and undertaking on appeal is denied for the reason that the original of such documents are required to be filed with the clerk of this court and this has been done. Coykendall et al. v. Gray et al., 53 Nev. 113, 293 P. 436.

The motion to strike the transcript of testimony is granted. The motion to strike the documents lettered (a) to (l) is granted.

It is so ordered.

BADT, C.J., and MERRILL, J., concur.

ON THE MERITS

October 26, 1951. 236 P.2d 793.

*George Lohse,* of Reno, for Appellants.

*Jack Streeter,* District Attorney of Washoe County, and *David Goldwater,* both of Reno, for Respondent.

**OPINION**

By the Court, EATHER, J.:

Respondent county commenced this action to condemn 120 acres of land owned by appellants, together with a right of way, or access to the same, comprising an additional 38.045 acres. Appellants' demurrer to the complaint was overruled by the district court, which likewise struck from appellants' answer their first and second affirmative defenses. The first affirmative defense alleged that plaintiff did not have power to exercise the right of eminent domain for the acquisition of the lands for the use alleged in the complaint. The second affirmative defense alleged on information and belief that respondent did not seek the lands for a public use, but in furtherance of a scheme cloaking a private use, to wit, the private development of a commercial ski area. Thereafter the case went to trial before the court without a jury; findings of fact and conclusions of law were filed by the court and a judgment of condemnation entered. The defendants did not move for a new trial but appealed from the judgment. We heretofore granted the motion of respondent to strike from the record on appeal the entire transcript of the testimony and all of the bill of

exceptions except the papers constituting the judgment roll. 68 Nev. 217, 229 P.2d 156. The appeal is accordingly before us on the judgment roll alone.

Appellants enumerate seven assignments of error. We dispose of the seventh assignment first. It is to the effect that the trial court erred in striking the first and second affirmative defenses above described. These defenses simply allege affirmatively the negative of the allegations of the complaint which the defendants had already denied in their answer. As a complete trial was apparently had upon the issues made by the complaint and answer, it cannot be said that any substantial right of the appellants was prejudiced by the striking of their affirmative defenses. We must therefore hold this assignment to be without merit.

The remaining assignments of error all attack the sufficiency of the complaint. Section 9159, N.C.L.1929, lists the matters which a complaint in condemnation must contain. The first three have to do with the name of the court, the name of the corporation, association, commission or person in charge of the public use for which the property is sought and the names of the owners of the property. These items are set forth with particularity in the complaint. The fourth requirement is a statement of the right of the plaintiff. Plaintiff's allegation in this respect is as follows:

"That the plaintiff has the power to exercise the right of eminent domain; that plaintiff seeks to condemn all of the lands described in Paragraph III of this complaint together with the right-of-way thereto as described in Paragraph III of this complaint, for use as a public park, picnic ground, and recreational area; that the use to which said land is to be applied is a use authorized by law and is necessary to provide adequate recreational facilities for the general public."

This is the meat of the appeal, and is hereinafter disposed of. The fifth requirement of what the complaint

must contain is, if a right of way be sought, the showing of the location, general route and termini and the submission of a map in connection therewith. This requirement has undoubtedly been complied with. The sixth and last requirement is for a description of the land sought to be taken and whether it includes the whole or any part of a tract, etc. It is not involved in any of the specifications of error.

Combining certain of the assignments of error for the purpose of brevity and to avoid repetition, these assignments appear to be as follows: (1) that the county commissioners do not have the power to condemn property for the purposes set forth in the complaint; that the taking is not for a public, county purpose; (2) that it does not appear that the county commissioners' resolution was based upon public convenience, necessity or welfare; (3) that the complaint fails to state the right by which respondent seeks to acquire the property; (4) that the allegations of the complaint that the use to which the property is to be applied is a use authorized by law and the allegations that the taking "is necessary to provide adequate recreational facilities for the general public" are legal conclusions and wholly insufficient in view of any failure to allege a determination by the county commissioners as to the necessity for the taking. The remaining assignments of error will be disposed of in the order presented.

Appellants assign as error that the complaint fails to show the basis in necessity, convenience and welfare in the resolution of the commissioners. In Kern County Union High School District v. McDonald, 180 Cal. 7, 179 P. 180, 182, the court states:

"It was not essential to the sufficiency of the cause of action pleaded that the complaint should contain an allegation that the plaintiff was empowered by a valid or any resolution of its board of trustees to proceed in condemnation. Sec. 1244 of the Code of Civil Procedure,

(Cal.) which prescribed the essentials of a complaint in eminent domain proceedings, does not require a statement of the adoption of such a resolution, and therefore it was not necessary to allege that fact. (Central Pacific R. R. Co. v. Feldman, 152 Cal. 308, 92 Pac. 849.)"

Appellants contend that respondent has failed to state the right by which respondent seeks to acquire the property. "The right" is, of course, that given to the plaintiff county by the state through the legislature. The Supreme Court of California, in Kern County Union High School District v. McDonald, supra, held that, as against a general demurrer, the complaint was sufficient by alleging "in effect" that the taking was sought pursuant to the provisions of the applicable sections of the Code of Civil Procedure. We think it clear that plaintiff's complaint alleged, in effect, that the chapter of Nevada Compiled Laws dealing with the subject of eminent domain was the basis of the right by which respondent sought to acquire the property. This chapter, comprising sections 9153 et seq., N.C.L.1929, as amended, specifies the uses for which eminent domain may be exercised, the estates, rights and property subject to condemnation, and the conditions precedent to condemnation. The remainder of the chapter has to do almost entirely with procedural matters and the jurisdiction of the court. We should be most reluctant to hold that the complaint was fatally defective for failure to refer to the precise sections of the code.

Appellants contend that the respondent's complaint fails to show that the attempted taking is for a public county purpose in accordance with law. At 4 Bancroft's Code Practice, page 3875, the writer points out:

"Ordinarily pleading the conclusion that the use is public is insufficient; it should be definitely shown that the use to which the property is to be put is a public one by pleading the ultimate facts. Thus it is held that

a complaint by a railroad corporation is sufficient if it alleges that the use thereof is necessary to the construction, maintenance or operation of its road, without alleging in terms that the desired use is a public one." Northern Pacific Ry. Co. v. Kreszeszewski, et al., 17 N.D. 203, 115 Northwestern 679.

Section 9153, N.C.L.1931–1941 Supp., lists the uses for which the right of eminent domain may be exercised. Appellants concede that under this section the right of eminent domain may be exercised by a county through its board of county commissioners, and that public parks are included as a proper public use. Appellants insist, however, that there is no statutory authorization for condemnation of privately owned lands by a county "for use as a public park, picnic ground, and recreational area," which are purposes alleged in the complaint. They point out that sec. 2049.11, N.C.L.1943–1949 Supp., authorizes boards of county commissioners of counties over 10,000 population to "acquire by purchase, contracts of purchase * * * gift or in any other manner, parcels of land for park, recreational and memorial purposes." They further point out that this statute carefully refrains from granting any specific right of condemnation and that under the rule of *ejusdem generis* the use of the phrase "or in any other manner" is restricted to the more specific methods recited, namely, the acquisition by purchase, contract of purchase or gift—and which might include the methods of lease, option or other voluntary arrangements made with the owners. Conceding the point for the sake of argument, respondent suggests that the use of the words "picnic ground and recreational area" may be considered as surplusage, leaving the proposed use of the property that of a public park. Appellants insist that this only serves to throw respondent upon the other horn of the dilemma in that a park under definition by the dictionaries and many courts, is a piece of ground "in or near a city set apart for the recreation of the public;" an area of land "devoted exclusively to

the use of the public and to be ornamented and embellished;" "an open or enclosed tract of land for the comfort and enjoyment of the inhabitants of the city or town in which it is located;" "a pleasure ground in or near a city, set apart for the recreation of the public."

Appellants insist that from the very location of the area as described in the complaint, from the map attached thereto as an exhibit and from the judicial knowledge or notice of the court, the 120 acres condemned are situate in a wild, unimproved, uninhabited mountainous region twenty-two miles from the city of Reno, which is the county seat of the county, at an elevation of 7,000 feet, snow-covered for a large portion of the year and suited only for a ski area.

Located as the area is, on the eastern slope of the Sierras, the court cannot but have knowledge, in common with all other inhabitants of the region, of the general nature of the 120 acres involved. It is a part of the Sierras and partakes of the general beauty of those mountains surrounding Lake Tahoe—Lake of the Skies. However, as to its more particular features, it is most evident that these were the subject of much testimony no part of which is now before us. If we have judicial knowledge that the slopes at this elevation will be covered by deep snow in winter, we likewise have judicial knowledge of their growth of pine, and fir, and cedar and spruce, their covering of undergrowth of chaparral and manzanita, their springs, streams, canyons, gullies, and their level areas, their sunshine as well as their shade, and their infinitely beautiful seasons of spring, summer and fall, as well as their snow-covered winters.

Without any record of the evidence before us, we are compelled to eliminate as mere conjecture the suggestion of appellants that the area is suitable only for the purposes of skiing. The uses to which the property was to be put were matters which properly should have been brought to the attention of the trial court and we assume

that they were so brought. That court by its findings and judgment has in effect determined that the use was to be that of a public park and recreation area. The only question before us is whether the language "public park" as used in the complaint stated a public use in the light of the location of the area sought to be condemned.

The words "public park" certainly cannot be narrowly construed to refer only to municipal parks. They must include state and county parks as well. The early conceptions of a city park as we have quoted them do not, we feel, so lend themselves to state or county parks as to exclude parks of all other types. The confinement of "parks" to congested areas, which some courts have regarded as appropriate in the case of cities, loses all sense of propriety when applied to state or county parks.

We feel that the case of Albright v. Sussex Co. Lake & Park Comm., 71 N.J.L. 303, 57 A. 398, 399, 69 L.R.A. 768, 108 Am.St.Rep. 749, 2 Ann.Cas. 48, cited by appellants, lends support to our position in this regard. The court there held unconstitutional a statute permitting resort to eminent domain to acquire public fishing rights in fresh-water lakes. The opinion states, however, "If the legislature had provided for condemnation of the lake [itself, instead of the mere right to fish therein] so as to confer upon the public the right of resorting thereto for all purposes to which it is adapted, the condemnation might then have been supported on the precedents which find a public use in parks, and the right to fish would have passed as an incident of the public title." So here, where both statute and precedent establish the right of condemnation for public park purposes, the use of the slopes as a ski area in winter simply passes as an incident to the public title.

Appellants place great reliance on the case of Peavy-Wilson Lumber Co. v. Brevard Co., 159 Fla. 311, 31 So.2d 483, 487, 172 A.L.R. 168. That case held that the taking of a "vast, uninhabitated and remote area," in order "to

make it available to others for hunting and fishing" was improper. The basis of the holding, however, was that no proper showing of public necessity had been made. The sufficiency of the complaint was not the issue, but the sufficiency of the showing made upon the trial.

"As this appeal is on the judgment roll alone, the evidence is not before us, and every intendment must be drawn in favor of the judgment." Robison v. Mathis, 49 Nev. 35, 45, 234 P. 690, 693.

Testing the complaint in view of the foregoing observations, we must conclude that a right of the exercise of eminent domain by the county for the purpose of parks is sufficiently pleaded, and that the district court's action in overruling the demurrer was proper. Nothing else is before us.

The judgment is affirmed with costs.

BADT, C. J., and MERRILL, J., concur.