JOSEPH J. SALITURO, Corporation Counsel, Kenosha County
You advise that the number of out-of-state people utilizing your county parks has become so large that Wisconsin residents are being denied the full utilization of these parks. This situation has apparently generated a desire to somehow control the use of your county parks by nonresidents. You further advise that your county is also interested in generating revenue at its parks to assist in paying for the cost of obtaining and maintaining them.
With the foregoing goals in mind, your County Park Commission has requested that you obtain my opinion in reference to three somewhat interrelated questions. You first inquire as follows: *Page 19 
"Can we charge a fee to out-of-state residents who use any of our parks?"
Generally speaking, parks are provided for the benefit of and are held in trust by government for the public. 10 McQuillin, MunicipalCorporations (3d ed., 1966 Rev. Vol.) § 28.52, p. 169; State ex rel.Hammann v. Levitan (1929), 200 Wis. 271, 278, 279, 228 N.W. 140. Thus, the dominant aim in their establishment appears to be the common good of mankind, rather than the special gain or private benefit of a particular municipality. 39 Am.Jur., Parks, Squares, and Playgrounds § 18, p. 815. As stated in 67 C.J.S., Park, at pp. 860-861:
The word `park' generally means a public park, and the customary use of the term is to designate a piece of ground maintained for the benefit and use of the public generally, a place open for everyone; and it carries no idea of restriction to any part of the public."
In modern times, the principal purpose of most parks is public recreation, and included in the word "recreation" is the right of assemblage, aesthetic recreation and mental and cultural entertainment as well as physical recreation. Committee for Industrial Organization v.Hague (1938), D.C.N.J. 25 F. Supp. 127, 145, mod. on other grounds in101 F.2d 774 and 307 U.S. 496, 83 L.ed. 1423, 59 S.Ct. 954; Bernstein v.City of Pittsburgh (1951), 366 Pa. 200, 77 A.2d 452, 455.
Normally, however, local government may establish reasonable fees relating to the use of the park facilities if such fees are designed to provide funds for the continuing operations of such park facilities. As stated in 64 C.J.S., Municipal Corporations, § 1818, at p. 303:
"Fees. As a general rule, municipal authorities may, in case of expense in maintaining service in a public park, demand a reasonable fee for individual use. So a reasonable fee may be charged for the use of a bathhouse, swimming pool, or pavilion . . . ."
See also 10 McQuillin, Municipal Corporations (3d ed., 1966 Rev. Vol.) § 28.54, p. 191. *Page 20 
In Wisconsin, counties have specific statutory authority to impose fees for the use of county park facilities. A county park commission established pursuant to sec. 27.02, Stats., possesses and exercises all of the powers and duties of a county rural planning committee under sec. 27.015, Stats. See sec. 27.015 (13). Section 27.015 (7) (f), Stats., in turn, provides that a county rural planning committee:
". . . may under the direction of the county board, operate a county park or parks for tourist camping and general public amusement, and mayestablish fees, concession privileges and grants and employ such help as is needed to operate the park or parks for the best county interests. The county board shall establish rules and regulations governing the conduct and behavior of patrons in and on any such park and shall provide for penalties for infraction of these rules and regulations . . . ." (Emphasis added.)
Even where authority to impose fees exists, however, unless clearly evident from the statute, such charges may not be established for general revenue purposes. Obviously, if our parks be viewed merely as a source of revenue, the broad public purposes they are intended to serve could be frustrated in large measure and those who would most benefit from them might be deprived of their use. 39 Am. Jur., Parks, Squares, andPlaygrounds, § 18, p. 815; 10 McQuillin, Municipal Corporations (3d ed., 1966 Rev. Vol.) § 28.10, p. 23. Therefore, since the above statute appears to authorize charges for the use of county park facilities only if related to current needs for operation, (which term I construe as sufficiently broad to include rehabilitation, repair and other expenditures necessary to maintain service), it cannot be viewed as statutory authorization for the establishment and utilization of public park fees for the purpose of producing revenue for such capital expenditures as the acquisition of county parks.
In response to your first question, then, it is clear from the foregoing that your county may charge individuals, including out-of-state residents, reasonable fees for the use of facilities in your county park or park system if such are *Page 21 
imposed for the purpose of providing funds for the continuing operation of such facilities.
Your second and third questions more specifically inquire whether your county may impose fees only on nonresidents of Wisconsin. You ask:
"Can we charge a fee to out-of-state residents and not state residents at those parks in which ORAP (one-cent cigarette tax) funds have been used since Wisconsin taxpayers, by paying this tax, help pay for the parks?
"Can we charge a fee to out-of-state residents and not Wisconsin residents at those parks in which ORAP 200 funds will be used since this will be a tax on all Wisconsin taxpayers?"
Nonresidents and residents call be treated differently where there are valid reasons for doing so. American Commuters Ass'n v. Levitt (D.C.N.Y. 1967), 279 F. Supp. 40, affirmed 405 F.2d 1148. See also 16A C.J.S.,Constitutional Law, § 470, p. 209; 16 Am. Jur. 2d, Constitutional Law, § 474, pp. 828-829. Thus, the courts will apparently allow a municipality to make different provisions for the use of specific public facilities for people residing outside a municipality from those residing in it, if the classification is based on a reasonable distinction. McClain v. Cityof South Pasadena (1957), 155 Cal. App. 2d 423, 318 P.2d 199, 207
(municipal plunge): Schreiber v. City of Rye (1967), 53 Misc. 2d 259,278 N.Y.S. 2d 527 (city golf course and swimming pool); People ex rel.Village of Larchmont v. Gilbert (1954), Co. Ct. 137 N.Y.S. 2d 389 (parking lot); People ex rel. Village of Lawrence v. Kraushaar (1949),195 Misc. 487, 89 N.Y.S. 2d 685 (parking lot): Cartwright v. Sharpe
(1968), 40 Wis.2d 494, 162 N.W.2d 5 (transportation of students). And it has been held that a classification may reasonably be based upon residence in a county as against nonresidence. Jones v. Hammer (1927),143 Wash. 525, 255 P. 955, 957. The foregoing cases clearly suggest that a county may reasonably distinguish between residents and nonresidents of the county for the purpose of insuring that its county parks remain available for the use of inhabitants of the county. *Page 22 
However, while discrimination between citizens and noncitizens or residents and nonresidents, is not necessarily improper, it often raises constitutional questions requiring judicial consideration. And as a general rule, unless required under the police power of the state for the protection of the local citizens, laws establishing unequal burdens on the basis of residence are held unconstitutional and void as violating some constitutional provision, including the privileges and immunities clause of Art. 4, § 2 and the equal protection clause of § 1 of the Fourteenth
Amendment, U.S. Const. 61 A.L.R. 63. See also Edgerton v. Slatter
(1935), 219 Wis. 381, 263 N.W. 83; Whipple v. South Milwaukee (1935),218 Wis. 395, 361 N.W. 235; Toomer v. Witsell (1948), 334 U.S. 385,68 S.Ct. 1156, 92 L.ed. 1460, rehearing denied 335 U.S. 837, 69 S.Ct. 12,93 L.ed. 389.
The provision of the Fourteenth Amendment which insures that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws," not only applies to the state but to all units of government of the state, including counties. 5 McQuillin, MunicipalCorporations (3d ed., 1969 Rev. Vol.), § 19.13, p. 425, 16 Am. Jur. 2d,Constitutional Law, § 491, p. 856. See also State v. Dering (1893),84 Wis. 585, 54 N.W. 1104. In addition, equal protection of the law as well as due process is also guaranteed to all persons by secs. 1, 13, and 22 of Art. I, Wis. Const. Chicago N.W. Ry. v. La Follette
(1969), 43 Wis.2d 631, 636, 169 N.W.2d 441. See also State ex rel.Sonneborn v. Sylvester (1965), 26 Wis.2d 43, 132 N.W.2d 249, Haase v.Sawicki (1963), 20 Wis.2d 308, 121 N.W.2d 876.
Since the equal protection of the laws guaranteed by both the Federal and our State Constitution forbids only unreasonable classification, the ultimate test is whether the basis for the classification proposed in your letter is reasonable. 5 McQuillin, Municipal Corporations (3d ed. 1969 Rev. Vol.), § 19.14. See State ex rel. Schopf v. Schubert (1969),45 Wis.2d 644, 651, 173 N.W.2d 673; Johnston v. Sheboygan (1966),30 Wis.2d 179, 184, 140 N.W.2d 247.
It is elementary that all legislative acts are presumed constitutional and every presumption must be indulged to *Page 23 
sustain the law if at all possible. Gottlieb v. City of Milwaukee
(1967), 33 Wis.2d 408, 415, 147 N.W.2d 633. A legislative body, therefore, has very broad discretion as to matters of classification and its judgment in reference thereto enjoys the presumption of reasonableness. Cayo v. Milwaukee (1969), 41 Wis.2d 643, 649,165 N.W.2d 198; State ex rel. Baer v. Milwaukee (1967), 33 Wis.2d 624, 633,148 N.W.2d 21; Associated Hospital Service, Inc. v. Milwaukee (1961),13 Wis.2d 447, 109 N.W.2d 271; 88 A.L.R. 2d 1395; Kiley v. Chicago, M. St. P. Ry. (1910), 142 Wis. 154, 159, 125 N.W. 464. Such a presumption collapses, however, in light of evidence which tends to establish the contrary. Schlichting v. Schlichting (1961), 15 Wis.2d 147, 112 N.W.2d 149. See 29 Am. Jur. 2d, Evidence, § 165, p. 203. The court will then scrutinize the distinction in light of the standards for constitutional classification established by our Supreme Court in State ex rel. FordHopkins Co. v. Mayor (1937), 226 Wis. 215, 222, 276 N.W. 311, which requires in part that all classifications be based upon substantial distinctions which make one class really different from another, that the classification be germane to the purpose sought to be accomplished and that the law apply equally to each member of a class. See Cayo v.Milwaukee, supra, at pp. 649-650 and State ex rel. Baer v. Milwaukee, supra, at p. 633.
Chapter 427, Laws of 1961, referred to as the Outdoor Recreation Act of 1961 or ORAP, provided for the establishment of a long range plan for a comprehensive statewide system of recreational facilities to be developed under the guidance of a state recreation committee and financed by a "penny-per-pack" cigarette tax. The program included a number of specific provisions authorizing state aid to assist eligible counties in the acquisition and development of outdoor recreational facilities. The general outdoor recreation program, including those provisions relating to state aids for county recreational facilities, was significantly altered and greatly expanded by the enactment of ch. 353, Laws of 1969, better known as ORAP-200. Although the cigarette tax instituted under the initial ORAP program continues, it is now paid into the state general fund, and the new program is financed through bonding and an allotment from *Page 24 
the general fund. Normally, costs associated with the operation and maintenance of parks and other outdoor facilities have not been eligible for state aid under either of these laws.
Since the occupational and use tax which supported the original ORAP program was ultimately passed on to the people who purchased and used cigarettes in Wisconsin, regardless of their residence, it does not appeal to form any reasonable justification for discriminating against nonresidents of Wisconsin in the manner contemplated. Under the ORAP-200 program this tax and all manner of other general state revenues which make up the general fund are utilized to support the program. However, these revenues are also obtained from nonresidents of Wisconsin as well as residents of this state. Therefore, it appears that the ORAP-200 legislation also fails to provide any reasonable basis for the proposed distinction. Further, a primary purpose and intent of both ORAP programs has been "to facilitate and encourage the fullest public use" of our outdoor recreation resources rather than limit utilization of such facilities.
Your letter suggests that the capacity of the public park facilities of your county are limited and insufficient to meet the needs of both county residents and the nonresidents of your county who seek to use them. It is therefore understandable that your county would and should take some appropriate action designed to avoid excessive breakdown and deterioration of your park facilities which might result from overcrowding. While parks normally provide recreational opportunities for the public at large, it is well recognized that parks of local governmental units are intended for the comfort and enjoyment of the local inhabitants. Baird v. Board ofRecreation Com'rs. of Village of South Orange, 108 N.J. Eq. 91, 154 A. 204,208, 209; Archer v. Salinas City, 93 Cal. 43, 28 P 839; Ramstad v. Carr,31 N.D. 504, 154 N.W. 195, 200; Bushard v. Washoe County, 68 Nev. 217,236 P.2d 793, 796; Borough of Fenwick v. Town of Old Saybrook, 133 Conn. 22,47 A.2d 849, 853. Indeed, this concept appears to be recognized in sec. 27.015 (7) (d), Stats., which provides that county park authorities shall: *Page 25 
"(d) Consider and provide for the establishment of community parks and woodlands, proportioned and situated so as to provide ample and equalfacilities for the establishment of community parks and residents of thecounty." (Emphasis added.)
However, the congestion at your parks may be caused or aggravated by nonresidents of your county who reside in other Wisconsin counties just as well as by nonresidents of Wisconsin. Under such circumstances, the act of singling out nonresidents of Wisconsin as the only individuals to pay the subject fees would appear to be based merely on the fact that these people are citizens of other states. In this regard, the discrimination which would result from requiring a fee from some, but not all, nonresidents of the county, is similar to that considered in Peopleex rel. Village of Lawrence, supra. In that case the court held that where a village ordinance fixed a municipal parking lot fee for residents of two communities outside the village limits at the same rate as for village residents while charging all other nonresidents a substantially higher fee, it unconstitutionally discriminated as to persons within a class of nonresidents of the village in violation of the equal protection clauses of both the state and federal constitutions.
As pointed out above, the fees authorized by sec. 27.015 (7) (f), Stats., were presumably intended to relate mainly to expenses of operating county park facilities rather than for the prevention of congestion in your parks. This is not to say that a legislative body may not limit the number of people who will engage in a particular activity, which if carried on without restraint as to numbers will be injurious to the public welfare, by the imposition of a charge or fee upon those engaging in the activity. Milwaukee v. Hoffmann (1965), 29 Wis.2d 193,138 N.W.2d 223. But even if such fees were effective in dissuading nonresidents of Wisconsin from using your park facilities, the question remains as to whether their numbers would simply be replaced with an equal number of residents from other Wisconsin counties. Under such circumstances, of course, the congested park conditions would obviously continue. *Page 26 
For the foregoing reasons, I am of the opinion that a county may not charge fees for the use of facilities in their county parks only to out-of-state residents while allowing all Wisconsin residents to utilize such facilities free of charge simply because ORAP or ORAP-200 funds are involved. Such action would create an arbitrary and unreasonable distinction based on residence and unconstitutionally deny residents of other states equal protection of the laws. In so concluding, however, I do not mean to intimate that situations may not arise which could form a reasonable basis for such distinction or that a county may not determine that circumstances justify the establishment of fees for the use of such park facilities which would apply to all but residents of the county in which the park or park system is located.
RWW:JCM