[S. F. No. 13245. In Bank.—March 30, 1929.]

.PASADENA CITY HIGH SCHOOL DISTRICT OF LOS ANGELES COUNTY, CALIFORNIA (a Public Corporation) et al., Petitioners, v. H. S. UPJOHN, as County Superintendent of Schools, etc., et al., Respondents.

Cruickshank, Brooke & Evans, Frank Karr, C. W. Cornell and R. E. Wedekind for Petitioners.

Everett W. Mattoon, County Counsel, and Claud H. McFadden, Deputy County Counsel, for Respondents.

SHENK, J.—The Pasadena City High School District of Los Angeles County and Pacific Electric Railway Company have joined in a petition for a writ of *mandamus* to compel the respondents as superintendent of schools and auditor, respectively, of the county of Los Angeles, to approve and issue certain warrants ordered by the school board of the High School District in favor of the railway company.

The facts are undisputed. The Pasadena City High School District comprises the territory included within the cities of Pasadena and Sierra Madre and unincorporated territory between and separating said cities. The high school district maintains high schools within the city of Pasadena, including a four-year high school located on Colorado Street between Hill Avenue and Sierra Bonita Avenue in said city. No high school is maintained within the limits of the city of Sierra Madre. The Pacific Electric Railway Company is a common carrier of passengers for hire and operates an electric interurban street-car and motor coach system, a portion of which is located within the urban and rural territory comprising the High School District. On August 15, 1927, the school board of the High School District and the railway company entered into a contract for the transportation of pupils residing

in the High School District to and from the high schools maintained by the district, including the transportation of pupils residing in the city of Sierra Madre, to and from the Colorado Street High School in the city of Pasadena. This contract by its terms was to continue until the end of the school year on June 30, 1928. Pursuant to said contract the high school board called upon the railway company to transport pupils who had their homes within said district, including the pupils residing in the city of Sierra Madre to and from the Colorado Street High School and the transportation was furnished accordingly. In due time the railway company presented to the high school board statements of the cost of such transportation in accordance with published tariffs on file with the Railroad Commission. Statements covering the cost of transportation of pupils residing within the corporate limits of the city of Sierra Madre, dated March 21, April 21, May 21, 1928, and in the amounts of $252.72, $203.58 and $177.21, respectively, were presented by the railway company to the high school board. Included also within each of said statements were many items covering the transportation of pupils residing within the unincorporated territory of the district. The board approved said statements and issued its orders for requisitions upon the county superintendent of schools and requisitions upon the county auditor for warrants upon the county treasurer for payment of the demands of the railway company. The superintendent and auditor refused to approve and allow said warrants in so far as they included items for the transportation of pupils residing in the city of Sierra Madre. Following this refusal, the high school board and the railway company, under date of September 7, 1928, entered into a contract for the transportation of pupils residing within the district but outside of the limits of incorporated cities to and from said Pasadena High School. It thus appears that the high school board is holding in abeyance the exercise of the power, if it has such power, to provide further transportation for pupils residing in Sierra Madre until the determination of this matter.

The question presented by the petition is this: Has the board of education of the Pasadena City High School District the power to provide, at the expense of

the district, transportation for high school pupils residing in Sierra Madre to and from said Pasadena City High School? The petitioners contend for the existence of such power because of the alleged unconstitutionali.y of an exception incorporated in section 1741 of the Political Code added by amendment in 1927 (Stats. 1927, p. 676). The respondents deny the existence of the power because of the presence in the statute of the exception and for other reasons.

The pertinent portion of said section 1741 as amended is as follows: "The high school board of any high school district may provide, in such manner as they deem best, for the transportation to and from the high school of such pupils thereof, except pupils living within the limits of any city, as such board find to be in need of such transportation; and the cost of the transportation shall be deemed a part of the cost of maintaining the high school and paid accordingly." Prior to the amendment in 1927 that portion of said section 1741 provided as follows: "The high school board of any county, union or joint union high school district may provide, in such manner as they deem best, for the transportation to and from the high school of such pupils thereof as such board find to be in need of such transportation; and the cost of such transportation shall be deemed a part of the cost of maintaining the high school and paid accordingly." (Stats. 1915, p. 769.) It will thus be seen that the amendment of 1927 enlarged the scope of the section so as to confer like power on boards of city high school districts, but at the same time, by the insertion of the proviso: "except pupils living within the limits of any city," the legislature sought to withhold from the school board the power to provide transportation for all high school students wherever residing and to include within the grant of power the authority to provide transportation for those pupils only who reside within unincorporated territory within the district. In this connection the petitioners allege that the nearest boundary of the city of Sierra Madre to said Pasadena City High School is approximately five miles distant therefrom. That the greater part of the city of Sierra Madre is at least six miles from said high school and that many of the high school pupils having their homes in the unincorporated area

within the district reside at points approximately the same distance from the high school as the pupils residing in the city of Sierra Madre. It is therefore argued by the petitioners that since no high schools are maintained in the unincorporated area available to pupils residing in the city of Sierra Madre, nor in the city of Sierra Madre, the pupils in both areas are in precisely the same situation with reference to accessibility to said high school and that the operation of the execution in its literal terms is to permit a privilege to be granted to the pupils in the unincorporated area which is not accorded to pupils similarly situated in the city of Sierra Madre, in violation of section 21 of article I of the constitution, which provides that no citizen or class of citizens shall be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens. It is accordingly argued that the entire exception is void and should be disregarded.

We cannot so conclude. Assuming for the moment that the entire exception be void, its invalidity would destroy the whole grant of power, for there is no indication that the legislature would have enacted the amended section without including the exception. (See *Bacon Service Corp.* v. *Huss*, 199 Cal. 21 [248 Pac. 235]; *Mordecai* v. *Board of Supervisors*, 183 Cal. 434 [192 Pac. 40].) On the contrary, the character of the legislation plainly indicates that it was not the intention of the legislature to permit free transportation to be afforded to all high school pupils regardless of the proximity of their homes to the high school if the exception should be held invalid. The obvious legislative intent was to authorize the transportation of pupils residing within the district, but residing outside of the limits of the city in which a high school is maintained and where no high school advantages are afforded such pupils in the territory of their residence. Considered literally the exception in its operation would seem to discriminate unlawfully in favor of pupils residing in the unincorporated area and against pupils similarly situated residing in the city of Sierra Madre. This discrimination would destroy the whole grant unless it may be said that the exception, when read in the light of the context and the subject matter of the legislation was not intended to and does not in fact operate as a discrimination between

pupils residing outside of the city maintaining the high school. We are of the view that there is such uncertainty as to the application, meaning and effect of the exception as to warrant us in declaring that it does not apply to pupils residing in territory outside of the city maintaining the high school, whether such territory be incorporated or unincorporated. When so construed the conditions that must exist in order that the power to provide transportation be exercised are that the pupils receiving the same shall reside in territory within the district but without the boundaries of the city maintaining the high school and that in such outside territory there is no high school which in the opinion of the board affords high school advantages required by the pupils for whom the transportation is furnished.

The contention of the respondents that the furnishing of transportation as authorized by the statute is a gift of public money or thing of value in contravention of section 31 of article IV of the constitution cannot be maintained. The state has a vital interest in the education of its youth. It furnishes free instruction, free text-books and supplies, and builds and maintains buildings representing large investments. It recognizes the public duty to provide adequate and accessible school facilities not only for those who reside in populous centers but also for those who reside in sparsely settled communities. The tendency to combine and enlarge high school districts in the interest of economy and proficiency is recognized. It seems reasonable to assume that training in our schools may best be accomplished by such centralization of educational facilities and that greater economy may result by transporting the pupils residing in sparsely settled communities to a central high school than to expend large and perhaps unwarranted sums of money in constructing numerous high schools in such outlying sections. Our laws have provided for transportation to be given to school children for many years as a maintenance cost (sec. 1610, Pol. Code, Stats. 1917, p. 739; sec. 1741, Pol. Code, Stats. 1909, p. 486; sec. 1764b, Pol. Code, Stats. 1921, p. 734). This has been done without question in the courts of this state on the ground that such provision is unconstitutional as a gift. In *Veterans' Welfare Board* v. *Riley,* 189 Cal., at page 161

[22 A. L. R. 1531, 208 Pac. 679], it was stated: "The plan of transporting school pupils to and from their homes, particularly in large union districts, is quite common in this state, and is expressly authorized by statute, [citing the sections of the Political Code above noted]. . . . The validity of these sections of the code has not been questioned in the courts of this state."

The respondents concede and contend that if the section (1741, Pol. Code), does not authorize the making of a gift of public money, it is general in its application and therefore valid in its entirety, including the exception, for the reason that by the selection of those pupils who reside in the unincorporated territory as the specially privileged ones and by the denial of like privileges to those residing in cities, proper classifications have resulted within well-recognized rules interpreting the constitutional provision. We cannot go to the full length contended for. The character of the territory as incorporated on the one hand and unincorporated on the other is one, but not the sole, determinative factor in the classification. The question of the availability of high school facilities and advantages must also be taken into consideration. When these two factors are considered and the statute is construed as above indicated, we find two classifications of pupils resulting from the legislation, viz.: those residing in the city of Pasadena in one class and those residing in the unincorporated area of the district and the city of Sierra Madre in the other. The question is then presented whether such classification is valid. On this point the petitioners allege that some of the pupils residing within the limits of the city of Pasadena travel a greater distance to the Pasadena City High School than some of the pupils who reside in the unincorporated area and in the city of Sierra Madre. In answer the respondents allege that additional high schools are maintained by the district, six of which are maintained within the city of Pasadena in addition to the Pasadena City High School, and which are more conveniently accessible to the pupils living in the city of Pasadena who now attend the Pasadena City High School. It must be assumed that the legislature took into consideration the well-known fact that high schools maintained in cities are usually more accessible to pupils residing therein

than to pupils residing without said cities. Because of the frequent irregularity of city boundary lines, it may at times be demonstrable that such is not the case in particular instances. But we think the classification is entitled to be tested by the conditions which usually and ordinarily exist. On this basis there would seem to be a reasonable distinction between those who live within the city where the high school is maintained and who have access to the school without transportation and those who live in outlying and more inaccessible portions of the district and require transportation. It cannot be said that under such circumstances the legislature may not provide for transportation to the latter and deny it to the former.

The peremptory writ should therefore issue directing the respondents to approve and issue warrants for the payment of the claims presented by the petitioners covering the cost of transporting the high school pupils who reside in the city of Sierra Madre to and from said Pasadena City High School pursuant to the contract under which said transportation was furnished.

It is so ordered.

Richards, J., Seawell, J., Preston, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.