**HOYNE, Plaintiff-Appellant, v. WURSTNER, et al., Defendants-Appellees.**

Ohio Appeals, Second District, Montgomery County.

No. 1841.   Decided May 18, 1945.

Scharrer, Scharrer & Hanaghan, Dayton, for plaintiff-appellant.

Herbert S. Beane, City Atty., Dayton, Cecil E. Edwards, Asst. City Atty., Dayton, for defendants-appellees.

## OPINION

By HORNBECK, P. J.

This appeal is noted as upon questions of law and fact but all proceedings since that time have treated the appeal as one upon questions of law. There is a bill of exceptions duly settled and allowed, assignments of error are filed and it is so briefed. We, therefore, consider and decide the appeal as upon questions of law.

Five errors are specified but they all may be encompassed in one, namely, that the evidence submitted on the issues does not support and is manifestly against the finding and judgment. The amended petition in substance asserts that the plaintiff at the date of its filing and continuously for approximately thirty years has owned and operated a funeral home at 1817 East Third Street in the City of Dayton, Ohio; that he has a large sum of money invested in the improvements; that his funeral home is situated on the north side of East Third Street between Folkerth Street and Webb Street and borders on an alley running northwardly along the side of the funeral home and between Folkerth and Webb Streets; that the lot upon which his establishment is located has a frontage of forty feet on East Third Street and a depth of one hundred feet; that to the east of his establishment are two residence properties, a double house and a two story frame residence which is at the northwest corner of Third and Webb Streets.

Plaintiff further says that in the operation of his business

of conducting funerals, it is necessary to park automobiles not only in front of his funeral home, but that said automobiles in the line of procession extend eastwardly toward Webb Street on the north side of East Third Street, a distance of approximately eighty-seven feet to the east of his establishment and in front of the residences known as 1823, 1825 and and 1829 East Third Street. Plaintiff further says that he has had free access to parking on the north side of East Third Street in front of 1817 (his own establishment) and residences known as 1823, 1825 and 1829 and on the west side of Webb Street north or Third Street, without interference from the defendants.

That on Tuesday, May 25, 1943, the officers of the Police Department, placed a "No Parking" sign on the curbing at the east lot line of 1817 East Third Street and also painted a yellow line on the curbing of 1823, 1825 and 1829 East Third and north on the west curbing of Webb Street approximately eighty feet. It is further asserted that the traffic conditions in the area affected are not interfered with by him in his handling of funeral processions; that he maintains a constant watch during the conduct of a funeral so as not to interfere with the flow of traffic and that the placing of the "No Parking" sign is unreasonable, discriminatory and unjust and by creating such restricted area has interfered with the operation of funerals by the plaintiff and defeats his rights as a funeral director in that particular vicinity for which he has no adequate remedy at law. The prayer is for a temporary order and a permanent injunction restraining defendants from in any manner interfering with the plaintiff in the operation of funerals by prohibiting parking in front of his funeral home at 1817 East Third Street, as well as in front of 1823, 1825 and 1829 East Third Street and extending northwardly on the west side of Webb Street.

The answer of defendant admits the placing of the "No Parking" sign and yellow lines on the premises described in the petition and denies the other allegations and further avers that the "No Parking" classification of the premises was made under the provisions of and in full accord with the Uniform Traffic Code of the State of Ohio and of Ordinances Nos. 15621 and 15800 of the City of Dayton, Ohio, for creating a uniform and comprehensive schedule of vehicle parking for and in the City of Dayton. The cause was submitted to the trial judge and finding made against the plaintiff and dismissing his petition.

The record is somewhat lengthy and, as to physical facts,

discloses that there is no restriction placed on parking in front of the funeral home, known as 1817 East Third Street, with a frontage of forty feet, but that to the east for a distance of about eighty-seven feet on Third Street in front of 1823, 1825 and 1829 East Third Street, and northwardly on the west side of Webb Street, for a distance of approximately eighty feet, the city pursuant to the ordinances plead and under the state law has ordered "No Parking" and painted the curb and placed signs to require conformance therewith.

The city cites as dispositive of this case, **Troy Amusement Co. v Attenweiler, et al., 137 Oh St 460,** which holds that

"Injunction will not lie to restrain criminal prosecution under a constitutional and valid statute * * * where the person seeking the injunction has a full, adequate and complete remedy in the defense he may make to the charge of violating the statute."

This case would have application but for the fact that the plaintiff does not concede the validity of the ordinances nor, in fact, of the state law. If he did, the cited case would be a complete answer to plaintiff's right to the relief sought.

There also arises the question whether or not the plaintiff would be entitled to the relief prayed if the ordinances could be invalidated without going further and declaring the applicable provisions of the Uniform Traffic Act to be unconstitutional. Indeed the plaintiff is confronted with the police power accorded to the state and, particularly, to the City of Dayton by virtue of our state constitution. These handicaps together with the presumption which attends the validity of statutory and ordinance enactment present an almost insuperable barrier to the plaintiff maintaining his suit.

To get our bearings we will state some principles of law well recognized by the bench and bar.

The first syllabus of **Allion v City of Toledo, 99 Oh St 416,** announces this principle:

"Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community."

Judge Jones writing the opinion in this case cited with

approval language from Schmidinger v Chicago, 243 Ill. 167:

"Local legislative authorities, and not the courts, are primarily the judges of the necessities of local situations calling for police regulation, and the courts can only interfere when such regulation arbitrarily exceeds a reasonable exercise of authority."

Judge Wanamaker in the opinion in **Perrysburg v Ridgway, 108 Oh St 245,** said at page 255:

"It would be a bold assertion to say that 'all powers of local self-government,' as used in the Ohio Constitution of 1912, did not include the power of complete regulation and control of the streets. The streets and alleys of a municipality are what the arteries and veins are to a man. Control must be placed somewhere, and, if there is any virtue whatsoever in democracy, why should not that control be placed in the community which opens the streets, pays for their establishment, their maintenance, and best understands their needs for durability and safety?"

The City of Dayton under specific constitutional and statutory authority, and in its exercise of the police power, may enact and enforce all reasonable regulations affecting the use of the streets which includes the control of traffic therein, **Art. XVIII, Sec. 3, Ohio Constitution, §6307-7 GC,** a part of the Uniform Traffic Code of Ohio. This section in part provides

(a) The provisions of this act shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from

1. Regulating the stopping, standing or parking of vehicles, trackless trolleys and street cars;

The street or highway includes

The entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel.

INTERSECTION. The area embraced within the prolongation of the lateral boundary line of two or more highways which join one another.

CROSSWALK. (a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured

from the curbs, or in the absence of curbs from the edges of the traversable roadway. §6307-2 GC.

A presumption of legality and good faith ordinarily attends the adoption of an ordinance duly passed by a municipal council until it is clearly established that the council has exceeded its powers, or has acted in bad faith, or has abused its discretion.

At the outset, it should be noted that, although the plaintiff now and for many years has conducted a large and important establishment with incidental funeral processions and the parking of vehicles connected therewith, the frontage involved in this suit is not that which abuts the property which he owns but is on lots owned by others. It is probable that the plaintiff will be inconvenienced in conducting funerals by the enforcement of the traffic regulations but we know of no provision in law, nor is any cited, that would accord him any rights greater than that of the public at large to park in front of the property involved in this suit. As a matter of fact, plaintiff's ability to accommodate owners of vehicles and funeral processions with parking privileges in front of the lots involved was the result of the public waiting its equal rights to park there. If the prayer of the petition were granted the plaintiff would have no superior rights to the public to park his own vehicles and those of his patrons in the frontage described.

It is the law that even an abutting owner has no rights in the street as against city or state enacting reasonable traffic regulations, including a ban on parking, unless it interferes with the owners right of ingress or egress to his own property.

The only issue drawn between the parties to this suit is whether or not the parking ban in front of the lots and frontage described in the petition is unreasonable in the test of proper regulation of the movement of traffic in the territory involved. On this subject, plaintiff introduced testimony tending to establish that with parked vehicles in a prohibited zone there was left enough room for convenient and safe passage of traffic, especially during the period of the day when funerals were ordinarily conducted. On the other hand, the city did not rely on the presumption that the ordinances were valid but at considerable length produced traffic experts who had made surveys and conducted test at and in the immediate vicinity under consideration, and their testimony tended to establish that traffic was heavy at the points involved; that parking along the frontage where

prohibited would and did seriously affect the free and safe movement of traffic, particularly vehicular. It also developed that many types of transportation moved in the territory, street car, interurban city buses, passenger automobiles and vehicular traffic to and from Wright and Patterson Fields.

It also appears that on East Third Street under the law, independent of the ordinances here under consideration, parking in front of most of the frontage involved would be prohibited because an intersection and crosswalk are included within the frontage and there would be left only approximately 14 feet, 8 inches not restricted which frontage would not be enough to permit the parking of one car.

There is some testimony upon which counsel for appellant comments to the effect that there are some intersections in the City of Dayton which the authorities have not specifically designated as "No Parking" zones and from this, presumably, it is urged that there is discrimination in the enforcement of the law. This, of course, is non sequitur upon the testimony but, even if true, would not provide a basis for the declaration of the invalidity or unconstitutionality of the ordinances and statutes applicable.

The trial judge made no separate findings of fact or law and upon the one issue involved must have found against the plaintiff upon the evidence and the weight thereof. In this conclusion he was well within his province and the finding and judgment could not in any view of the record require or permit a reversal.

The city concedes that the traffic regulations would not prevent the formation of a funeral procession along the curb in the no parking area for the purpose of unloading or loading passengers. This concession would seem to accord to the plaintiff the right to draw up the vehicles in the funeral procession to the curb and there load the passengers preparatory to the movement of the procession. This privilege which no doubt would not be exercised by the public generally, but particularly by the plaintiff, might assure to him more available space in front of the lots involved than would be assured if there were no parking restrictions in this territory. This is true because, if there were no restrictions, the general public would have the same right to park along the curb in front of the lots involved as would the plaintiff and his patrons.

The judgment will be affirmed.

GEIGER and MILLER, JJ., concur.