[Civ. No. 22181. Second Dist., Div. Three. Nov. 22, 1957.]

SUSAN McCLAIN, a Minor, etc., Appellant, v. CITY OF SOUTH PASADENA et al., Respondents.

426

A. L. Wirin and Hugh R. Manes for Appellant.

Braeme E. Gigas, City Attorney, and Dunlap, Holmes, Ross & Woodson for Respondents.

VALLÉE, J.—Plaintiff, a Negro, brought this suit for damages and an injunction against the city of South Pasadena

and officers and employees thereof on the alleged ground she had been unlawfully excluded from the municipal plunge on August 2, 1955, because of her race. The complaint alleges "plaintiff now brings this action under Sections 51, 52 and 53 of the Civil Code." The prayer is for $1,000 damages against each defendant and for an injunction restraining defendants from excluding plaintiff from the South Pasadena municipal plunge.

Defendants admitted plaintiff had been excluded from the plunge but alleged the exclusion was solely on the ground she was a nonresident of South Pasadena and that one of the requirements for admission to the plunge was that admittees be residents of South Pasadena.

The cause was tried by the court without a jury. At the trial plaintiff moved for judgment on the pleadings on the ground the regulation excluding nonresidents from the plunge is unlawful. The motion was denied. Judgment was for defendants. Plaintiff appeals.

On August 2, 1955, South Pasadena was a city of the fifth class located in the county of Los Angeles with a population of about 19,000.[1] At that time there apparently were no Negroes residing within the city.

Since 1939 the city has owned and operated through its department of recreation a municipal plunge. An admission fee is charged. In 1942 the recreation commission adopted this regulation:

"The use of the pool and the recreational facilities adjacent thereto is limited to residents of the City of South Pasadena."[2] The regulation was adopted due to the fact that so many nonresidents were making use of the plunge that residents of South Pasadena had difficulty in obtaining entrance to it.

The plunge is 50 by 100 feet and has a comfortable capacity of about 350 simultaneous users. In June 1955 there were about 6,000 users; in July, about 14,000. The peak usage

---

[1] In August 1955 section 34111 of the Government Code provided that cities having a population of more than 8,000 and not exceeding 20,000 are cities of the fifth class. Effective September 7, 1955 section 34111 and other sections classifying unchartered cities were repealed and section 34102 added reading: "Cities organized under the general law shall be 'general law cities.'" (Stats., 1955, ch. 624, p. 1120, §§ 53, 54.)

[2] The regulation was one of several adopted at the same time. They read:

"CITY OF SOUTH PASADENA
"DEPARTMENT OF RECREATION

"The Superintendent and employees of the South Pasadena Recreation Department will endeavor to maintain these premises so that patrons

is in the month of August. In August 1955 over 15,000 users, or about 500 a day, were recorded. It is the only municipally owned plunge in South Pasadena.

In the afternoon of August 2, 1955, John H. Abbott, a Caucasian residing in the city of Los Angeles, took his two daughters and plaintiff, a 9-year-old Negro girl, also a resident of Los Angeles, to the plunge. He purchased and received four tickets of admission. At this point the cashier, defendant McColgan, noticed plaintiff and asked Abbott if she was in his party. He said, "Yes." McColgan told him, "We couldn't let them in because we have a policy that we reserve the right of use of the pool to residents." She testified she knew plaintiff was not a resident because at that time there were no Negro families living in South Pasadena. She then called the assistant manager, defendant Skraba. Skraba asked Abbott if he were a resident of South Pasadena and Abbott said, "No." Skraba said, "Therefore, according to our policy, you must be excluded because you are nonresident." Abbott, his two children, and plaintiff were denied admission to the plunge.

Dr. Martin, a member of the recreation commission from 1941 to 1944, testified the plunge was the only one of any size in the vicinity and that when it was newly built it attracted so many nonresidents that residents of South Pasadena had difficulty in obtaining entrance to the use of the

can enjoy them to the utmost and at the same time be assured of health and safety.

"We request the full cooperation of our patrons in obeying these Rules and Regulations.

"1. The use of the pool and the recreational facilities adjacent thereto is limited to residents of the City of South Pasadena.

"2. No profane or indecent language will be permitted.

"3. The conduct of patrons shall be above reproach at all times.

"4. No smoking by players in competitive games will be permitted. (Good sportsmen refrain from smoking while playing in any game.)

"5. The use of intoxicating beverages on the playgrounds is strictly prohibited and also those persons under its influence.

"6. Dogs are not allowed on the playgrounds except on leash.

"7. Good sportsmanship shall be practiced in the use of the courts.

"8. Additional rules for the plunge.

"(a) The management does not assume liability for articles checked, although reasonable care will be taken to prevent loss.

"(b) The management reserves the right to refuse admittance to any person not presenting a currently dated medical certificate from a resident physician.

"(c) Showers are required before entering the plunge.

"(d) Smoking prohibited on plunge deck except in designated area.

"(e) Smoking by children prohibited at all times.

"(f) No candy or gum allowed in the pool.

"(g) No lunches on pool deck or locker room."

facilities. Consequently, the recreation commission approved the regulation restricting use of the plunge to residents of South Pasadena.

Skraba testified he worked as a lifeguard and assistant plunge manager during the summer season for the years 1953 through 1955 and that he was instructed by the superintendent of the department of recreation, defendant Seiler, and the manager of the plunge, defendant Cornell, that the city had a regulation limiting use of the plunge to residents of the city; he was not instructed to exclude from the plunge any person on the ground of race, color, or creed. He testified the regulation was invoked in 1955 to exclude nonresident Caucasians.

The plunge is open from about the middle of June through September for use by residents of South Pasadena on Monday through Saturday from 10 to 12 and from 1 to 5; Monday, Wednesday, and Friday evenings from 7 to 10; and Sundays from 1 to 5. Occasionally at other hours the plunge has been rented to various organizations without restriction as to race, color, or creed. There was testimony by a Mr. Acorn, who made arrangements with the recreation department for rental of the plunge by the churches of South Pasadena in 1955, that no restriction was made with regard to the use of the plunge by members of the Negro race or any other race, color, or creed who might be using it as a part of his group. In 1955 the plunge was rented to a Japanese Buddhist organization and no restriction was specified by South Pasadena as to the use of the plunge by members of the organization with respect to race, color, or creed.

There was much evidence from past and present city officials that South Pasadena has never adopted a regulation, rule, policy, or schedule of any kind limiting, restricting, or excluding Negroes from any recreation facility owned or operated by the city because of race or color.

There was no evidence that any Negro resident of South Pasadena was denied admission to the plunge at any time since it was built.

The court found: 1. On August 2, 1955, there was in existence a regulation of the city of South Pasadena and its department of recreation requiring persons who used the plunge to be residents of the city, and on that day McColgan and Skraba knew of the regulation. 2. The plunge was the only such facility publicly owned and operated in and by

the city; the plunge was of such size and capacity, the city was so populated, and the seasonal use of the plunge was of such extent and character that the regulation was reasonably justified to assure the orderly use of the plunge and its maximum usefulness. 3. Plaintiff was not a resident of South Pasadena and she was denied permission to use the plunge solely because of the regulation and not on account of her race or color. 4. At no time did South Pasadena, its department of recreation, or any of its officers or employees adopt or issue any regulation, rule, policy, custom, or usage which prohibited persons of Negro extraction from use of public recreation facilities on account of their race or color. 5. Persons of Negro extraction have always been permitted to use the public recreational facilities of South Pasadena on the same basis as persons of all other races and colors. 6. Plaintiff did not sustain any embarrassment, humiliation, chagrin, mental anguish, hurt feelings, or physical or mental suffering because of any act, conduct, practice, or omission on the part of defendants. 7. Injunctive relief is not necessary or proper. 8. Plaintiff has not been damaged at all by reason of any regulation, rule, act, or omission of any defendant. The court concluded plaintiff was lawfully denied permission to use the plunge on the occasion alleged and she was not on that occasion denied any right, privilege, or immunity, or deprived of due process of law or the equal protection of the laws.

It is asserted the court erred in denying plaintiff's motion for judgment on the pleadings. ▮ A plaintiff may recover judgment on a motion for judgment on the pleadings only if his complaint states facts sufficient to constitute a cause of action and the answer neither raises a material issue nor states a defense. (*Barasch* v. *Epstein*, 147 Cal.App.2d 439, 440 [305 P.2d 283].) The complaint alleged that the regulation of South Pasadena prohibited entry into or use of the plunge by all persons of Negro extraction and that plaintiff was excluded solely because she is a Negro. The answer denied these allegations and alleged that in addition to a ticket of admission another requirement to gain admission to the plunge was that persons be residents of South Pasadena. The complaint alleged and the answer denied that Abbott purchased four tickets of admission including one for plaintiff. The answer alleged plaintiff was denied entrance to the plunge solely on the ground she was a nonresident of South Pasadena; to wit, a resident of Los Angeles. The

answer alleged, "Persons of negro extraction have always been permitted and are now permitted to use, and have used, the public recreational facilities of the City on the same basis as persons of all other races and colors." ■ Every allegation affirmatively pleaded in the answer must be deemed true. (*Cuneo* v. *Lawson*, 203 Cal. 190, 193 [263 P. 530].) Issues of fact were raised. The motion for judgment on the pleadings was properly denied.

It is next asserted the finding that plaintiff was not denied admission to the municipal plunge on account of her race or color is against the weight of evidence. The point is without substance. ■ The prerogative of weighing the evidence is in the trier of fact. ■ We do not reweigh the evidence on review. ■ When it is claimed the evidence is insufficient to support the findings the function of a reviewing court ends when it finds substantial evidence in the record which supports the findings. The evidence related supports the finding in this respect.

Plaintiff challenges the validity of the regulation on the ground it violates sections 51-53 of the Civil Code. Section 51 provides that all citizens under state jurisdiction are entitled to the full and equal accommodations, advantages, facilities, and privileges of bathhouses, and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law applicable alike to all citizens.[3] Section 52 prescribes the liability of persons who deny such accommodations and privileges "except for reasons applicable alike to every race or color," or make "any discrimination, distinction or restriction on account of color or race, or except for good cause, applicable alike to citizens of every color or race whatsoever."[4] Section 53 provides

[3]Section 51 reads: "All citizens within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating-houses, places where ice cream or soft drinks of any kind are sold for consumption on the premises, barber shops, bath houses, theaters, skating rinks, public conveyances and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law, and applicable alike to all citizens."

[4]Section 52 reads: "Whoever denies to any citizen, except for reasons applicable alike to every race or color, the full accommodations, advantages, facilities, and privileges enumerated in section fifty-one of this code, or who aids, or incites, such denial, or whoever makes any discrimination, distinction or restriction on account of color or race, or except for good cause, applicable alike to citizens of every color or race whatsoever, in respect to the admission of any citizen to, or his treatment in, any inn, hotel, restaurant, eating house, place where ice cream

that it is unlawful for the proprietor of any place of public amusement or entertainment to refuse admittance to any person over the age of 21 years, who presents a ticket of admission acquired by purchase, or who tenders the price thereof for such ticket, and who demands admission to such place.[5]

■ Contrary to the suggestion of plaintiff, section 53 has no application. It applies only to the refusal of admittance "to any person over twenty-one years." (See *Weaver* v. *Pasadena Tournament of Roses Assn.*, 32 Cal.2d 833, 838 [198 P.2d 514].) Plaintiff was nine years old in August 1955. *Jones* v. *Kehrlein*, 49 Cal.App. 646 [194 P. 55], does not decide otherwise. Jones, a minor, recovered under sections 51 and 52 and, the court held, properly so. The court said section 53 "was never intended to form a defense to an action by one whose rights under sections 51 and 52 have been violated."

■ The intent of section 51 is to give all persons full and equal accommodations and privileges in places of public accommodation and amusement, "subject only to the conditions and limitations established by law, and applicable alike to all citizens." Sections 51 and 52 are to be read and construed together. Under section 52 liability is imposed only if the denial of the accommodations, facilities, and privileges enumerated in section 51 is not "for reasons applicable alike to every race or color," or only if the citizen is discriminated against on account of race or color and the discrimination is not "for good cause, applicable alike to citizens of every color or race whatsoever." The regulation in question is applicable "alike to every race or color," and it applies "alike to citizens of every color or race whatsoever." ■ The

---

or soft drinks are sold for consumption on the premises, barber shop, bath house, theater, skating rink, public conveyance, or other public place of amusement or accommodation, whether such place is licensed or not, or whoever aids or incites such discrimination, distinction or restriction, for each and every such offense is liable in damages in an amount not less than one hundred dollars, which may be recovered in an action at law brought for that purpose."

[5]Section 53 reads: "It is unlawful for any corporation, person, or association, or the proprietor, lessee, or the agents of either, of any opera house, theater, melodeon, museum, circus, caravan, race-course, fair or other place of public amusement or entertainment, to refuse admittance to any person over the age of twenty-one years, who presents a ticket of admission acquired by purchase, or who tenders the price thereof for such ticket, and who demands admission to such place. Any person under the influence of liquor, or who is guilty of boisterous conduct, or any person of lewd or immoral character, may be excluded from any such place of amusement."

phrase in section 52 "or except for good cause" is to be read "or [whoever makes any discrimination, distinction, or restriction] except for good cause." In other words, any unreasonable discrimination is forbidden. If the ground of exclusion is reasonable it is valid. (*Orloff* v. *Los Angeles Turf Club,* 36 Cal.2d 734, 737, 740-741 [227 P.2d 449].) The question remains whether the regulation restricting use of the plunge to residents of South Pasadena is reasonable.

Plaintiff invokes the equal protection of the laws provision of the Constitution of the United States[6] and the privileges or immunities provision of the Constitution of California.[7] Problems of classification under the California Constitution are similar to those presented by the equal protection clause of the Fourteenth Amendment. Under either provision "the mere production of inequality which necessarily results to some degree in every selection of persons for regulation does not place the classification within the constitutional prohibition. The discrimination or inequality produced, in order to conflict with the constitutional provisions, must be 'actually and palpably unreasonable and arbitrary,' or the legislative determination as to what is a sufficient distinction to warrant the classification will not be overthrown. [Citations.] When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification." (*People* v. *Western Fruit Growers,* 22 Cal.2d 494, 506-507 [140 P.2d 13].) When a municipal regulation is within the power of the municipality the presumption is that it is reasonable unless on its face unreasonableness is apparent, and reasonable doubts regarding its validity, if any, will be resolved in its favor. (*Natural Milk Producers Assn.* v. *City & County of San Francisco,* 20 Cal.2d 101, 114 [124 P.2d 25]; *Matter of Application of Miller,* 162 Cal. 687, 696 [124 P. 427]; *Glass* v. *City of Fresno,* 17 Cal.App.2d 555, 560 [62 P.2d 765]; *Sawyer* v. *Barbour,* 142 Cal.App.2d 827, 833 [300 P.2d 187].)

 All differentiation by municipal regulation as to nonresidents is not constitutionally prohibited and void. (*Hansen* v. *Town of Antioch,* 18 Cal.2d 110 [114 P.2d 329]. See *Webb* v. *State University of New York,* 125 F.Supp. 910,

[6]Fourteenth Amendment.
[7]Article I, section 21.

app. dis'd. 348 U.S. 867 [75 S.Ct. 113, 99 L.Ed. 683].)[8] It is only when the municipal regulation discriminates unreasonably that it violates constitutional requirements. (*People* v. *Gilbert*, 137 N.Y.S.2d 389, 392; *People* v. *Kraushaar*, 89 N.Y.S.2d 685, 688; *City of Ottumwa* v. *Zekind*, 95 Iowa 622 [64 N.W. 646, 647, 58 Am.St.Rep. 447, 29 L.R.A. 734].) [13] A regulation making different provision for people residing outside a municipality from those residing in it is valid if the classification is based on a reasonable distinction. Such a regulation is not unconstitutional because it results in some practical inequality. All so-called local option regulations are based on this principle. (*Heartt* v. *Village of Downers Grove*, 278 Ill. 92 [115 N.E. 869, 870]. See *Kellar* v. *City of Los Angeles*, 179 Cal. 605 [178 P. 505].) A municipal regulation applying alike to all persons similarly situated, without distinction as to nationality, race, color, or creed, is not in violation of the federal or state Constitutions. (*Barbier* v. *Connolly*, 113 U.S. 27 [5 S.Ct. 357, 28 L.Ed. 923, 924-925]; *Hing* v. *Crowley*, 113 U.S. 703 [5 S.Ct. 730, 28 L.Ed. 1145, 1147]; *Ex parte Moynier*, 65 Cal. 33, 36 [2 P. 728].) Under the requirements of the Constitutions the question is whether the regulation restricting use of the plunge to residents of South Pasadena is reasonable.

Plaintiff says the regulation is not a lawful exercise of the police power. Any city may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws. (Const., art XI, § 11; *Simpson* v. *City of Los Angeles*, 40 Cal.2d 271, 278 [253 P.2d 464].) The power to make local and police regulations is very broad and far-reaching. Except to the extent that the Legislature has decreed otherwise, South Pasadena may pass and enforce any reasonable regulation with respect to the use of its municipal plunge. "A large discretion is vested in the legislative branch of the government with reference to the exercise of the police power. Every intendment is to be indulged by the courts in favor of the validity of its exercise and unless the measure is clearly oppressive it will be deemed to be within the purview of that power. It is only when it is palpable that the measure in controversy has no real or substantial relation to the public health, safety,

[8]In *Sivertsen* v. *City of Menlo Park*, 17 Cal.2d 197 [109 P.2d 928], the court stated (p. 199): "It is not denied by the appellant and it is well established by the authorities that there may be discrimination between businesses of the same character located within and those located without the boundaries of a municipality in regard to license fees."

morals or general welfare that it will be nullified by the courts." (*Magruder* v. *Redwood City*, 203 Cal. 665, 672 [265 P. 806].) If good grounds for a classification in a municipal regulation exist, such classification is not void because it does not embrace within it every other class which might be included. (*Keenan* v. *San Francisco Unified School Dist.*, 34 Cal.2d 708, 713 [214 P.2d 382].) It is implicit in the theory of the police power that an individual cannot complain of incidental injury, if the power is exercised for proper purposes of public health, safety, morals, and general welfare, and if there is no arbitrary and unreasonable application in a particular case. (*McCarthy* v. *City of Manhattan Beach*, 41 Cal.2d 879, 890 [264 P.2d 932].) A classification is reasonable if it has a substantial relation to a legitimate objective to be accomplished. (*Dribin* v. *Superior Court*, 37 Cal.2d 345, 352 [231 P.2d 809, 24 A.L.R.2d 864].) Thus the regulation is a valid exercise of the police power if it is reasonable.

It is argued that nonresidents on occasions used the plunge prior to August, 1955, and that such use invalidated the regulation. The fact that a municipal regulation may not have been enforced uniformly against all violators does not render it discriminatory. The arbitrary and discriminatory character of a regulation that vitiates it does not lie in its misapplication or maladministration by those entrusted with executing it. (*Zucht* v. *King,* (Tex.Civ.App.) 225 S.W. 267, 273; *City of Denver* v. *Girard,* 21 Colo. 447 [42 P. 662, 664]; *City of Omaha* v. *Lewis & Smith Drug Co.,* 156 Neb. 650 [57 N.W.2d 269, 272]; *Hoyne* v. *Wurstner,* (Ohio App.) 63 N.E.2d 229, 233; *Cunningham* v. *City of Niagara Falls,* 242 App.Div. 39 [272 N.Y.S. 720, 722-723]; *Wade* v. *City & County of San Francisco,* 82 Cal.App.2d 337, 339 [186 P.2d 181].)

 It is asserted that because the plunge was constructed at least in part from funds obtained by South Pasadena from the federal government that all persons resident in the United States have the right to its use. Section 37351 of the Government Code provides that the legislative body of a city of the fifth class may purchase or receive such personal property and real estate as is necessary or proper for municipal purposes, and that it may control *"such property for the benefit of the city."* (Italics added.) At the time in question section 39732 of the Government Code authorized the legislative body of a city of the fifth class to "Acquire, own, construct,

maintain, and operate . . . parks, and baths." Section 37354 authorizes the legislative body of any city to accept any gift made to the city. Section 37355 provides that if the terms of a gift do not prescribe or limit the uses to which the gift may be put, it may be put to such uses as the legislative body prescribes. The terms of the gift of whatever funds may have been received from the federal government did not prescribe or limit the use to which the gift might be put other than it was "to aid in financing the construction of a municipal swimming pool and bath house." The fact that South Pasadena may have received part of the funds with which to build the plunge from the federal government does not give all persons resident in the United States the right to use it. Whatever the source of the funds, the plunge is the property of South Pasadena.

The crux of the case is, therefore, whether the regulation restricting use of the plunge to residents of South Pasadena is reasonable. We think it is. There is no arbitrary formula by which the reasonableness of a regulation such as that in question can be tested. Its validity depends, to a considerable extent, on surrounding circumstances and its purposes and operation. Regard must be had for its object and necessity.

In maintaining and operating the plunge South Pasadena is acting in a governmental capacity. This is true even though an admission fee is charged. (*Crone* v. *City of El Cajon*, 133 Cal.App. 624, 628-629 [24 P.2d 846]; *Kellar* v. *City of Los Angeles*, 179 Cal. 605, 608 [178 P. 505]; *Hannon* v. *City of Waterbury*, 106 Conn. 13 [136 A. 876, 57 A.L.R. 402].) The maintenance and operation of a municipal plunge is primarily for the especial benefit of the inhabitants of the municipality in which the plunge exists. (*Hannon* v. *City of Waterbury*, 106 Conn. 13 ·[136 A. 876, 877, 57 A.L.R. 402].) The plunge is maintained by the taxpayers of South Pasadena. It is maintained to promote the health, morals, comfort, convenience, and general welfare of the residents of the city. A fundamental function and prime duty of a municipality is to preserve the health of its residents. (*Kellar* v. *City of Los Angeles*, 179 Cal. 605, 609 [178 P. 505].) "Children's playgrounds and recreation centers established and maintained by a city *for the general use of the children of the city,* where so conducted as to partake in no degree of the nature of a private business enterprise, do not substantially differ from a public park in so far as the question here

involved is concerned. Like the public parks, they are referable solely to the duty of maintaining the public health, and have nothing of the nature of an ordinary business enterprise." (Italics added. *Kellar* v. *City of Los Angeles,* 179 Cal. 605, 609 [178 P. 505]. See *In re Thomas,* 10 Cal. App. 375, 377 [102 P. 19].)

In *People* v. *Gilbert,* 137 N.Y.S.2d 389, the village of Larchmont established a parking lot exclusively for the inhabitants of the municipality. The court stated (p. 392):

"The Court sees no good reason why a municipality should not be permitted to set aside a parking area exclusively for the use of its own residents. . . .

"All residents of the Village of Larchmont are similarly treated in furtherance of a legitimate public object. The attempt to control the difficult problem of parking cannot be held to be arbitrary." *Jones* v. *Hammer,* 143 Wash. 525 [255 P. 955], says that a classification based on residence in a county as against residence outside is neither arbitrary nor unreasonable. (Also see *Haavik* v. *Alaska Packers' Asso.,* 263 U.S. 510 [44 S.Ct. 177, 68 L.Ed. 414, 417]; *McCready* v. *Commonwealth of Virginia,* 94 U.S. 391 [24 L.Ed. 248]; *Lyman* v. *Adorno,* 133 Conn. 511 [52 A.2d 702, 707-708]; *People* v. *Kraushaar,* 89 N.Y.S.2d 685, 688. *Cf. Pasadena City High School Dist.* v. *Upjohn,* 206 Cal. 775 [276 P. 341, 63 A.L.R. 408].)

▪ A regulation designed to prevent congestion in a municipal plunge is a valid exercise of the police power for the health, safety, morals, and general welfare. The very nature of a plunge limits the number of those who may use it at one time. The purpose of the regulation is to avoid congestion in the plunge; for a proper distribution of patrons; and for the better protection, safety, comfort, convenience, and health of persons using it. ▪ As the trial court found, the plunge was of such size and capacity, the city was so populated, and the seasonal use of the plunge was of such extent and character that the regulation was reasonably justified to assure the orderly use of the plunge and its maximum usefulness. Bathing is a recognized public use, and one of the objects of regulation is to secure the orderly use of municipal facilities.[9]

---

[9] "Swimming is a universal recreation of the highest order. It is a most healthful, invigorating, and agreeable exercise. It has an economic as well as a social value in conserving health. It strengthens one's lungs, because it compels deep breathing. It strengthens the nervous system,

The regulation excludes all nonresidents, irrespective of race, color or creed. It operates equally on all persons similarly situated and uniformly on all persons within the same class. Nonresidents are not situated similarly to residents. Persons are not similarly situated if there is any reasonable difference in their relation to the purposes of the regulation. The classification is reasonably related to the end in view. It bears a real and substantial relation to the health, safety, morals, and general welfare of the residents of South Pasadena. ▮▮▮▮ South Pasadena has the sovereign duty of maintaining the health of its residents. (*Kellar* v. *City of Los Angeles,* 179 Cal. 605, 608 [178 P. 505].) It owes no such duty to nonresidents. Residents are entitled to preference over nonresidents and such action is not in contravention of the rights of nonresidents. The primary purpose of a municipal corporation is to contribute toward the welfare, health, happiness, and interest of the inhabitants of such corporation, and not to further the interests of those residing outside its limits. (37 Am.Jur. 736, § 122.) There is no classification of racial groups residing within South Pasadena. If plaintiff's position were sustained, nonresidents of South Pasadena from anywhere in the country would have carte blanche to use the plunge. The regulation restricting use of the plunge to residents of South Pasadena was a reasonable regulation.

We are not to be understood as implying that an owner of property in a municipality who is a nonresident thereof

---

because it induces natural sleep. It strengthens the spine and enlarges the chest, because it causes the head to be thrown back and the chest out. It strengthens and sets right the pelvic organs, because the body is in motion on the horizontal plane. It strengthens the skin and prevents the growth of gray hair. It reduces the corpulent and rounds out the attenuated. One forgets his business cares while swimming, and thus it helps to preserve his mental balance as well as muscular symmetry. By correcting tendencies to weakness in various ways, it improves one's temper and disposition, for 'a healthy liver maketh a cheerful man.' It relieves strain on the human constitution caused through inactivity. There is no better exercise than swimming to offset the evils of a sedentary life, as it brings into activity every muscle in the body without any undue strain on any one set of muscles. It keeps the muscles supple, enlarges the diaphragm and the thorax, wards off tuberculosis, straightens the spinal column, corrects humpback, and evils that arise from the use of improper clothing. It strengthens the skin, the muscles of which are brought into action being released from the weight and tension of heavy garments. See At Home in the Water, pp. 6, 7, by Geo. H. Corsan.

''We conclude that cities with propriety may have parks with modern, sanitary pools *to which its citizens may resort for the benefit of their health.* Whatever encourages or induces the ordinary 'city shut-in' to seek exercise, relaxation, recreation, or healthful amusement is a means redounding to the public welfare and should be approved.'' (*Smith* v. *Fuest,* 125 Kan. 341 [263 P. 1069, 1070]. Italics added.)

could be excluded from use of a plunge owned by the municipality. That question is not before us.

Plaintiff was not excluded from the plunge because she is a Negro. She was excluded, like the Caucasians who were with her, because she was a nonresident. If she had been a resident of South Pasadena, under the uncontradicted evidence, she would have been admitted. There was no unreasonable or unlawful discrimination.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied December 20, 1957, and appellant's petition for a hearing by the Supreme Court was denied January 15, 1958. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.