[Civ. No. 6956.   Fourth Dist.   May 22, 1963.]

CLARENCE LEROY HOLMES, Plaintiff and Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Defendant and Respondent.

530

Gostin & Katz, Thad Williams, Alpha Montgomery, Edward Maddox, Robert A. Ward, John W. Porter and Louis S. Katz for Plaintiff and Appellant.

Samuel B. Stewart, Robert H. Fabian and George L. Beckwith for Defendant and Respondent.

GRIFFIN, P. J.—In the second amendment to the complaint, plaintiff-appellant Clarence L. Holmes alleged that defendants Macco Corporation, a corporation (hereinafter referred to as Macco), National Award Homes of California, a corporation (hereinafter referred to as National), and Bank of America National Trust and Savings Association, a national trust and savings association (hereinafter referred to as Bank) were liable in damages to him; that National and Macco were engaged in the business of developing, building and selling a tract of housing accommodations known as National Award Homes in San Diego County; that at all times herein mentioned, each of the defendants was the agent and employer of each of the remaining defendants and was at all times acting within the scope and purpose of said agency and employment; that Bank was engaged in the business of banking, which includes making loans under the state and national

laws to qualified persons for the purchase of homes and for other purposes; that said Bank was chartered under federal and state laws of the State of California and the United States of America, and that under the Federal Housing Administration and the Veterans Administration, Bank has agreed to comply with the federal and state laws in regulation of loans for home purchases; that about May 27, 1960, and continuing thereafter, defendants Macco and Bank entered into a financial agreement wherein the defendant Macco, working as the agent of defendant Bank, offered for sale to the public homes to be financed through the Bank; that defendant Bank, acting as the agent of said defendant Macco, agreed to handle all financing on all homes, including those financed under the Federal Housing Authority and the Veterans Administration financing procedure; that plaintiff is a member of the Negro race; that on May 27, 1960, plaintiff was, and ever since has been, ready, willing and able to purchase housing accommodations in National Award Homes; that on that day he, by written application, offered to purchase one of the homes which defendants were and still are displaying and offering to the public generally for $15,850; that at all times mentioned, defendants and each of them have conspired and agreed to deprive plaintiff, and all other Negroes, of a home in said tract, and that they have carried out a policy and practice of refusing to sell housing accommodations in their National Award Homes development to persons of the Negro race because of their race and color and have systematically discriminated against such persons for reason of race and color in the terms, conditions and privileges of furnishing of facilities and services in connection with their business establishments and the sale of said housing accommodations; that defendant Bank has, as an agent and coconspirator of the other defendants, maintained and carried out a policy and practice of refusing to finance housing accommodations in the National Award Homes tract development to persons of the Negro race, solely because of the race and color of such persons, and, solely for said reason, have systematically discriminated against such persons for reasons of race and color, in the financing, sales and placement of loans in connection with the said tract and the placing of said housing accommodation loans; that defendants Macco, Bank and National, by and through their agents and employees, and as agents and employees of each other, have denied to plaintiff the full and equal accommodations, advan-

tages, facilities, privileges and services of their business establishments, in violation of Civil Code, section 51, which reads:

"All persons within the jurisdiction of this State are free and equal, and no matter what their race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

"This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every color, race, religion, ancestry, or national origin."

The second amendment to the complaint further alleges that said defendants, fully aware of the provisions of the state law of California, have intentionally violated that law and have intentionally deprived plaintiff of the right to finance or purchase a home, contrary to the laws of the State of California; that Bank, knowing the terms and provisions of Civil Code, section 52, and knowing that:

"Whoever denies, or who aids, or incites such denial, or whoever makes any discrimination, distinction or restriction on account of color, race, religion, ancestry, or national origin, contrary to the provisions of section 51 of this code, is liable for each and every such offense for the actual damages, and two hundred fifty dollars ($250) in addition thereto, suffered by any person denied the rights provided in section 51 of this code.";

that said Bank has refused to grant a loan to plaintiff solely because of plaintiff's race and that it aided the defendant Macco and incited the denial of the housing accommodations to plaintiff, despite the fact that at all times mentioned herein plaintiff did and now does qualify financially and otherwise for the purchase of said housing accommodations; that plaintiff is informed and believes and therefore alleges that defendant Bank, as agent of defendant National, has made at least two separate credit checks on plaintiff and has, as a result of these credit checks, learned that plaintiff's credit rating is satisfactory and that plaintiff is eligible for financing on the basis of his credit rating, income and job status; that in spite of satisfactory credit checks, the application of plaintiff has not at this time been approved for purchase of a home and will not be approved because of his color; that the standard procedure for processing applications for said homes allows the purchaser to move in within 10 days after the signing of the offer to purchase and the payment of a

deposit of $100; that plaintiff has deposited the $100 and complied with all the terms of the offer to purchase and to the contract entered into between plaintiff and defendants, but defendants have failed and refused to comply with the written agreement; that the discriminatory actions of the defendants and each of them were willful, malicious and intentional, and were carried out by the defendants with knowledge of their illegality. Plaintiff claims damages to the extent of $5,000.

It is then further alleged that in order to facilitate and encourage the construction of housing units and to effectuate the purpose of the National Housing Act of 1934, as amended, and pursuant to its terms and the rules and regulations of the Federal Housing Administration, defendant Macco has applied for and obtained government financing and Veterans Administration guarantees and has made arrangements with Bank, which has also complied with the Federal Housing Authority rules and regulations and has received government guarantees to provide the funds for sale of homes in the aforesaid tract; that the said Federal Housing Administration, employing the funds, resources and credit of all the citizens of the United States of America, without distinction as to race, color or creed, facilitated and made possible said loans by insuring the loans and agreeing to indemnify any of said banks and financial institutions against loss in the event of the failure of borrowers to repay said loans; that the rules and regulations adopted by said Federal Housing Administration to govern the issuance of said loan insurance under the National Housing Act provide that the builder must construct the homes and plan the community in conformity with detailed and comprehensive requirements provided by the Federal Housing Administration; that since February 15, 1960, one of the rules and regulations of the Federal Housing Administration (rule 14, Administrative Rules and Regulations, under section 8 of the National Housing Act) with which each person securing an insurance guarantee from said agency must agree to comply, in writing, reads as follows:

"That mortgage shall contain a covenant by the mortgagor that until the mortgage has been paid in full, or the contract of insurance otherwise terminated, he will not execute or file for record any instrument which imposes a restriction upon the sale or occupancy of the mortgaged property on the basis of race, color or creed . . .";

that during the year 1960, the builders of National Award Homes made a formal request to the Federal Housing Au-

thority for a subdivision report; that said subdivision report was filed and thereby defendant Macco and the tract of National Award Homes thus became eligible for Federal Housing Administration financing; that, by request for a subdivision report, defendants asked for Federal Housing Authority financing and thus agreed to be bound by the federal laws in construction, sale and financing of said homes.

It is then alleged that heretofore, and at a time, date and place unknown to plaintiff, but well known to defendants and each of them, defendants Macco, National and Bank entered into an oral agreement between themselvss to impose special restrictions upon the sale, financing and occupancy of real property on the sole ground of race, creed or color, in that they agreed and conspired that none of them would sell to, lease to or rent to, or permit occupancy by, this plaintiff or any other Negro, of housing built under the terms of the National Housing Act, whether built by, constructed by, sold by, leased by, or rented by defendants or financed by any of the defendants; that ever since that time defendants have adhered to said conspiracy and oral agreement, as set forth in this paragraph, and that each of them has failed and refused to sell to, lease to, rent to or permit occupancy by this plaintiff, or any other Negro, of said housing mentioned in this complaint; that such agreement has been adhered to by all defendants, whether acting in their capacities as owners, builders, developers, agents, real estate brokers, lending institutions or real estate salesmen of said property, and that such agreement is now and was at all times mentioned in the complaint in full force and effect among said defendants and each of them; that the defendants entered into said oral agreement and have adhered to said agreement for the sole purpose of denying to plaintiff and all other Negroes the right or privilege of purchasing or occupying housing on real property improved with the aid of Federal Housing Administration loan insurance, and with an intent to deny plaintiff and other Negroes the right to purchase and occupy such property in San Diego County or in houses owned, controlled, built or financed by said defendants; that pursuant to the conspiracy and oral agreement entered into between them, defendant Bank rejected the application of plaintiff herein allegedly "because of his marital status and also because he has been twice divorced"; that said reason was and is not a legal or valid reason for denying credit or a loan to plaintiff.

It is then alleged that said defendants agreed and con-

spired to prevent plaintiff from acquiring a home solely because of his race and color, by the subterfuge of refusing to grant credit to plaintiff through defendant Bank, well knowing that Health and Safety Code, section 35720, applied to said defendants because the housing herein described was "publicly assisted housing accommodations" and that a denial of housing accommodations or of a loan thereon is contrary to the laws of the State of California and the United States of America.

The demurrer of defendant Bank to this complaint was sustained without leave to amend and judgment for Bank followed. This appeal is from that judgment. The other defendants answered the complaint.

Respondent now argues that the obtaining of a bank loan is not an accommodation, advantage, facility, privilege or service in a business establishment, within the meaning of Civil Code, section 51, and it does not require a national bank to lend its money on a nondiscriminatory basis; that no one has a right granted by law or otherwise to demand that a bank grant him a loan; that a bank may refuse, in its own discretion, to make a loan for any reason or for no reason at all; that a loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which is borrowed (citing Civ. Code, § 1912); that as a bank does not owe a duty to appellant to grant him a loan, it cannot be held liable for withholding its consent; that the Legislature did not intend to include the business of lending money when it used the words "accommodations, advantages, facilities, privileges, or services"; that although Civil Code, section 51, applies to "all business establishments of every kind whatsoever," the Legislature did not intend section 51 to apply to all and every type or kind of business *transaction* whatsoever; that if that had been the intent of the Legislature, it would have so stated in general language and not set forth in particularity that type of business transaction intended; that since a loan transaction is a contract, and since no person has a right to compel another to enter into a contract with him without the other's consent, the loan transaction falls within the express legislative exceptions set forth in the second paragraph of Civil Code, section 51.

Assuming, without deciding, the correctness of these general propositions of law, we are still confronted with the allegations that not only Macco, but National and Bank, en-

tered into a conspiracy and an oral agreement between themselves to impose special restrictions upon the sale, financing and occupancy of real property on the sole ground of race, creed or color, in that they agreed and conspired that none of them would sell to, lease to or rent to, or permit occupancy by this plaintiff or any other Negro of housing built under the terms of the National Housing Act, whether built by, constructed by, sold by, leased by or rented by defendants or financed by any of the defendants.

The claimed conspiracy is set forth in some detail. It is not argued by Bank that no cause of action is stated against the claimed coconspirators. Apparently, they have elected to meet the issue, and the pleadings might well show a cause of action against them. (Civ. Code, § 51; *Vargas* v. *Hampson*, 57 Cal.2d 479 [20 Cal.Rptr. 618, 370 P.2d 322]; *Lee* v. *O'Hara*, 57 Cal.2d 476 [20 Cal.Rptr. 617, 370 P.2d 321]; *Burks* v. *Poppy Construction Co.*, 57 Cal.2d 463 [20 Cal.Rptr. 609, 370 P.2d 313]; *McClain* v. *City of South Pasadena*, 155 Cal.App.2d 423 [318 P.2d 199].) Civil Code, section 52, provides:

"Whoever denies, or who aids, or incites such denial, or whoever makes any discrimination, distinction or restriction on account of color, race . . . contrary to the provisions of Section 51 of this code, is liable . . ."

Whether defendant Bank did so aid the other defendants in such denial or discrimination would appear to be a factual question, and it cannot be determined as a question of law from the facts pleaded.

Judgment and order sustaining demurrer without leave to amend reversed.

Coughlin, J., and Brown (G.), J., concurred.